**Thomas OSES, Petitioner, Appellee,**

v.

**COMMONWEALTH of MASSACHUSETTS, Respondent, Appellant.**

No. 91–2193.

United States Court of Appeals, First Circuit.

Heard March 4, 1992.

Decided April 15, 1992.

LaDonna J. Hatton, Asst. Atty. Gen., with whom Scott Harshbarger, Atty. Gen., Boston, Mass., was on brief, for appellant.

Anthony Mirenda with whom David R. Geiger and Foley, Hoag & Eliot, Boston, Mass., were on brief, for appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL and BOWNES, Senior Circuit Judges.

PER CURIAM.

This is an appeal from the grant of writ of habeas corpus by the district court finding that petitioner's 1977 convictions for armed assault and kidnapping in the Superior Court of Massachusetts were unconstitutional. Petitioner Thomas Oses claimed in his petition that his Sixth Amendment right of self-representation had been constitutionally impaired through various errors during his trial in the Massachusetts Superior Court. Oses further claimed that his Fifth Amendment due process rights were violated when the trial court judge improperly suggested that he would testify when

he had no intention to do so. Finally Oses argued that the trial judge improperly instructed the jury on reasonable doubt thereby lessening the government's burden and violating his due process rights to a fair trial.

The district court, in a comprehensive opinion, held that petitioner's Sixth Amendment right of *pro se* representation had been impaired and granted him a conditional writ of habeas corpus: "Accordingly, the writ of habeas corpus shall issue unless, within 90 days from the date of this order, the respondent has reinstituted proceedings to retry the petitioner." *Oses v. Commonwealth of Massachusetts*, 775 F.Supp. 443, 467 (D.Mass.1991). We affirm substantially for the reasons set out on the district court's thorough opinion, subject to our reservation in note 1, *infra*. There is no need to repeat the court's analysis here, which we basically adopt.

■ The court found that three sets of errors in combination led to a violation of petitioner's Sixth Amendment constitutional right to represent himself. At the beginning of the trial, petitioner moved to be admitted to any bench or lobby conferences held during the trial. The trial court stated that it did not intend to have any bench or lobby conferences. The trial court nevertheless held numerous such conferences. By our own count over seventy bench or lobby conferences were held during the course of the twenty-three day trial. The petitioner was excluded from all of them although stand-by counsel was present. These conferences covered such important issues as the number of witnesses that the defendant intended to call, a motion for mistrial following a prosecutor's improper comment, and the admission of evidence. *Id.* at 458. No reason was ever given for excluding petitioner.

■ The district court also found that the security methods utilized during the

course of trial were a factor in depriving the petitioner of his right to represent himself. At the beginning of the trial, the trial court judge abdicated his responsibility for exercising any oversight whatever over the security methods used by the sheriffs during the course of trial. In at least one day of the trial, the petitioner was forced to conduct his defense while in leg irons and manacles. At another time he was gagged in front of the jury. The trial court judge had promised petitioner a cautionary instruction to the jury regarding the manacles; none was given. *Id.* at 459–60. While the district court correctly recognized that, in very extreme circumstances, such restraints might be proper, it noted that the trial judge made no inquiry into the possible use of less restrictive measures. The court pointed out that contrary to the teaching of *Commonwealth v. Brown*, 364 Mass. 471, 478, 305 N.E.2d 830 (1973), the trial judge did not hold a hearing on the unusual security measures and did not state on the record his reasons for approving them.

■ Finally, the district court found that comments made in the hearing of the jury by the trial judge and his unwillingness to curb the prosecutor's rhetorical excesses contributed to violate petitioner's right to represent himself. The judge's comments were found to be sarcastic and damaging, amounting to "a wholesale judicial rejection of the validity of Oses's *pro se* defense." *Id.* at 460. Further, "the prosecutor in this case also made certain improper remarks about Oses and his defense in the presence of the jury" which the judge refused to curb. *Id.* at 462.

■ After a careful examination of the record we uphold the district court's findings of fact and substantially adopt the legal conclusions of the district court.[1] We feel compelled, however, to make two ob-

---

**1.** We note that the district court in dicta commented on two issues not raised in the habeas petition. First, the court suggested the trial judge's improper comment suggesting the petitioner would testify in his own behalf was another violation of Oses's Sixth Amendment rights. Second, the district court observed that

the trial judge's improper comments during the course of trial constituted a violation of petitioner's Fifth Amendment due process rights. Insofar as the district court discussed issues not raised in the habeas petition, we do not adopt its conclusions.

servations. First, this case involved a defendant who was uncooperative and at times deliberately obstreperous. The trial took twenty-three days. During the trial the defendant conducted much needless cross-examination, periodically interrupted the judge and prosecutor, and frequently interspersed his questioning of witnesses with statements. We can recognize the problems and the strain involved in presiding over this case. These difficulties, however, cannot and do not excuse the trial court's improper conduct during the trial. We agree with the district court that the judge's conduct incited the defendant to misbehave. The trial judge should have realized that his sarcasm and pettiness had the effect of pouring gasoline on a fire.

 Second, we, like the district court, have thought twice about granting a writ of habeas corpus over fourteen years after the petitioner was convicted. We observe, however, that during ten of those fourteen years petitioner was trying to pursue a direct appeal in the state courts. It is not clear why the direct appeal took such a long period of time. *See id.* at 449 n. 9. What seems clear is that this delay was not the fault of the petitioner.

The grant of the conditional writ of habeas corpus is *affirmed.*