698 S.E.2d 237

**The STATE, Respondent,**

v.

**Johnell PORTER, Appellant.**

**No. 4672.**

Court of Appeals of South Carolina.

Submitted March 1, 2010.

Decided April 5, 2010.

Withdrawn, Substituted, and Refiled July 7, 2010.

30

Appellate Defender M. Celia Robinson, of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, Assistant Attorney General

Julie M. Thames, all of Columbia; Solicitor Kevin Scott Brackett, of York, for Respondent.

WILLIAMS, J.

Johnell Porter (Porter) appeals his convictions for conspiracy to commit armed robbery, armed robbery, entering a bank with intent to steal, kidnapping, and possession of a firearm during the commission of a violent crime. On appeal, we must determine whether the trial court erred in (1) refusing to quash the indictments or dismiss the case when Porter was arrested in North Carolina by South Carolina officers who did not take him before a magistrate; (2) admitting into evidence items found in the parking lot where Porter's vehicle stopped; (3) excluding Porter from a bench conference during the trial when Porter was representing himself pro se; and (4) refusing to issue the kidnapping charge requested by the defense. We affirm.

## FACTS/PROCEDURAL HISTORY

On December 22, 2006, at approximately 10:30 a.m., Porter, along with Kenneth Young (Young) and Donshavis Jones (Jones), entered the front door of the Lake Wylie Branch of the Bank of York (the Bank). All three men wore dark ski masks, dark clothing, and gloves. All three were armed with handguns and at least one had a canister of pepper spray. Porter and Young approached the teller line and the customer service desk, pointed their guns at the employees, and ordered them to lie down. Porter and Young then ordered some of the employees and customers to crawl into the main vault and told some of the tellers to open their individual vaults.[1] At the same time, Jones carried a pillowcase into the main vault and began filling it with money. After Jones retrieved roughly $18,000, the three men left, leaving all of the employees and customers locked in the main vault. The three men got into a rented Ford Taurus (the Taurus) driven by Angela Laws (Laws).[2] The Taurus exited the Bank's parking lot and drove east on Highway 49 towards Charlotte.

---

1. According to testimony from Bank employees, each teller had his or her own individual vault contained within the larger, main vault.

2. Young testified that prior to the robbery, he duct-taped a dealer tag over the South Carolina license plate of the Taurus.

Fortunately, it was the Bank's policy to leave a key in the main vault at all times for such an event, so the employees and customers were able to get out of the main vault soon after the robbers left. The vice president of the Bank, Mike Lubiato (Lubiato), immediately called 9–1–1. While he was on the phone with the 9–1–1 dispatcher, Lubiato spoke to a customer who had been waiting outside at the drive through window. The customer stated the getaway car was a gray or bluish gray Ford Taurus with a dealer tag. Lubiato relayed this information to the dispatcher.

Officer Terry Vinesett (Officer Vinesett) of the York County Sheriff's Department was on duty in his patrol car on the morning of December 22, 2006, when he received a call about an armed robbery at the Bank. The dispatcher stated the robbery involved four to five people, and the robbers fled the Bank in a blue or gray Ford Taurus. Constable Wes Scott (Constable Scott) was riding along with Officer Vinesett that day. Driving directly behind Officer Vinesett was Officer Randy Gibson (Officer Gibson). While the officers were about to make a left turn onto Highway 49 from Carowinds Boulevard, Officer Gibson saw the Taurus turning south on Carowinds Boulevard towards York County. When Officer Gibson alerted Officer Vinesett over his radio that he had seen the Taurus, he and Officer Vinesett immediately made a U-turn and followed the Taurus. As soon as the Taurus crossed over the York County line, Officer Vinesett and Officer Gibson turned on their lights and sirens.[3] Upon seeing the officers' lights, Laws began to speed up and turned onto Interstate 77 northbound towards Charlotte. Laws traveled several miles on the interstate before exiting at Arrowood Road in Charlotte.

Eventually, Laws turned into the parking lot of an apartment complex and came to a stop. Jones, who was seated in the back seat on the driver's side of the Taurus, attempted to flee. Before he could exit the Taurus, however, Officer Vinesett drove his patrol car into the left side of the Taurus,

---

**3.** The activation of the lights automatically activated the dashboard cameras inside the patrol cars, which captured the ensuing chase of the Taurus until it stopped in the parking lot of an apartment complex in North Carolina. The video taken from the cameras was admitted into evidence without objection.

injuring Jones's left leg. Officer Gibson arrived in the parking lot just as the collision occurred.

Officer Vinesett, Constable Scott, and Officer Gibson exited their respective patrol cars and ordered all four suspects out of the Taurus. The officers placed the suspects in handcuffs and searched them for weapons. They did not read the suspects their *Miranda* rights. A short time later, officers from the Charlotte Police Department arrived and took custody of the four suspects. Both Officer Vinesett and Officer Gibson testified they did not take any of the suspects before a magistrate that day.

On the back of the Taurus, Officer Vinesett found a dealer tag duct-taped over a South Carolina license plate. In the backseat floorboard of the Taurus, Officer Vinesett found bullets, a blue ski mask, rubber gloves, a revolver, and a pillowcase containing a nine millimeter pistol, several rounds of ammunition, and roughly $18,000. In the passenger seat, Officer Vinesett found a pack of cigarettes and a wig. On the ground outside the Taurus, Officer Vinesett found another blue ski mask, a pair of black gloves, a blue shirt, a pair of black boots with one containing a pocket knife, a black jacket, a pair of black tennis shoes, and a pillowcase containing a pair of white tennis shoes, a white dew rag, a can of pepper spray, and a black t-shirt.[4]

On December 27, 2006, officials from the York County Sheriff's Office obtained warrants for the four suspects and faxed them to the Charlotte Mecklenberg Police Department. Thereafter, York County officials commenced the extradition process in January 2007. In June 2007, Porter was indicted for kidnapping, entering a bank with intent to steal, armed robbery, possession of a firearm during the commission of a violent crime, and conspiracy to commit armed robbery. Laws and Jones pled guilty to armed robbery. Young and Porter were tried before the Honorable John C. Hayes, III in July 2007. Porter proceeded pro se but was appointed standby counsel.

At trial, the State presented testimony from the employees and customers in the Bank. None of the employees or custom-

---

4. The State's forensic technicians all testified that none of the items found in the Taurus had any fingerprints on them.

ers could identify any of the robbers because they were all wearing ski masks and gloves during the robbery. However, Lubiato testified that each teller at the Bank is instructed to keep a record of the serial numbers of five $100 bills in their vault at all times. This is commonly referred to as "bait money." In the event the Bank is robbed, the money stolen can be identified because it will contain the bait money. Lubiato testified that the $18,000 stolen from the Bank on the morning in question contained bait money. He further testified the money the police found in the Taurus and returned to the Bank contained all of the bait money from one of the teller's vaults at the Bank.

The State also presented video footage from security cameras mounted inside and outside the Bank and also from the dashboard cameras mounted inside Officer Vinesett's and Officer Gibson's vehicles. The footage from the Bank showed three men in dark clothing and ski masks enter the Bank, order the employees and customers at gun point into the main vault, and then leave in a gray Ford Taurus. The footage from the dashboard cameras showed the chase from Highway 49 into the apartment complex in Charlotte.

Finally, the State presented testimony from Laws and Jones, both of whom had already pled guilty to armed robbery. Both testified that on the morning of December 22, 2006, they, along with Porter and Young, drove a rented gray Ford Taurus to the Bank. They further testified Jones, Young, and Porter entered the Bank carrying guns and wearing dark clothing and ski masks. Jones specifically testified Porter had called him earlier that week to ask him to be the "money man" in a bank robbery and to bring a pillowcase to hold the money.

The jury found Porter guilty on all counts. The trial court sentenced Porter to life in prison without the possibility of parole for armed robbery, kidnapping, and entering a bank with intent to steal, and five years for both the conspiracy and possession of a firearm. This appeal followed.

## STANDARD OF REVIEW

In criminal cases, the appellate court sits to review errors of law only. *State v. Cutter*, 261 S.C. 140, 147, 199 S.E.2d 61, 65 (1973). Appellate courts are bound by the trial

court's factual findings unless they are clearly erroneous. *State v. Quattlebaum,* 338 S.C. 441, 452, 527 S.E.2d 105, 111 (2000).

## LAW/ANALYSIS

### a. Motion To Quash The Indictments or Dismiss The Case

█ Porter argues the trial court erred in refusing to quash the indictments or dismiss this case because the South Carolina officers who arrested him in North Carolina failed to comply with the North Carolina law that would have permitted his arrest. However, we do not believe this issue is preserved for our review.

█ An issue is deemed abandoned and will not be considered on appeal if the argument is raised in a brief but not supported by authority. *Glasscock, Inc. v. U.S. Fidelity & Guar. Co.,* 348 S.C. 76, 81, 557 S.E.2d 689, 691 (Ct.App.2001). In his brief, Porter argues:

> The trial judge erred in refusing to quash the indictments or to dismiss the case against appellant where appellant was arrested by South Carolina officers in North Carolina and where the officers failed to comply with the North Carolina statute which would have permitted such an arrest.

In that section of Porter's brief, however, he does not cite to any authority that supports this specific argument. The only citations in that section of his argument are to the North Carolina statute and to two cases that define an arrest. The statute itself does not state the consequences of violating the statute, either in North Carolina or anywhere else. Thus, the mere fact that Porter cited to the statute does not provide this court with any guidance as to why the South Carolina officer's failure to present him to a magistrate should result in the remedy he seeks, i.e., the quashing of the indictments or the dismissal of the case against him. While the argument *contains* citations to authority, those authorities do not *support* his specific argument whatsoever. Consequently, we hold this issue unpreserved for failure to cite any *supporting* authority. *See State v. Howard,* 384 S.C. 212, 218, 682 S.E.2d 42, 45 (Ct.App.2009) (holding argument abandoned when defendant

failed to cite any authority in specific support of his assertion that the trial court erred in denying his motion for a mistrial).

### b. Admission of Items Found Near Car

■■ Porter argues the trial court erred in admitting into evidence items [5] that were found in the parking lot near the Taurus because (1) there was no testimony tying these items to the defendants, (2) the items were not found in the possession of the defendants or in the car, and (3) the police found no fingerprints on the items. We disagree.

■■ The admission or exclusion of evidence is left to the sound discretion of the trial court, and the court's decision will not be reversed absent an abuse of discretion. *State v. Pagan,* 369 S.C. 201, 208, 631 S.E.2d 262, 265 (2006). An abuse of discretion occurs when the conclusions of the trial court either lack evidentiary support or are controlled by an error of law. *State v. McDonald,* 343 S.C. 319, 325, 540 S.E.2d 464, 467 (2000). To warrant a reversal based on the admission of evidence, the appellant must show both error and resulting prejudice. *Commerce Ctr. of Greenville, Inc. v. W. Powers McElveen & Assocs., Inc.,* 347 S.C. 545, 559, 556 S.E.2d 718, 726 (Ct.App.2001).

We find no error in the trial court's decision to admit these items. First, we believe there was sufficient evidentiary support for the trial court's finding there was a nexus between these items, the defendants, and the robbery. *See State v. Adams,* 377 S.C. 334, 337, 659 S.E.2d 272, 274 (Ct.App.2008) (holding the decision to admit evidence will not be reversed unless the conclusions of the trial court either lack evidentiary support or are controlled by an error of law). As to the ski mask, gloves, blue shirt, black jacket, black boots, and black tennis shoes, the State presented testimony from numerous Bank employees and customers that the robbers all wore ski masks, black or dark blue clothing, and gloves.

---

5. Porter objected to the admission of (1) a blue ski mask, (2) a pair of black gloves, (3) a blue shirt, (4) a pair of black boots, (5) a pocket knife that was found in the left black boot, (6) a black jacket, (7) a pair of black tennis shoes, and (8) a pillowcase containing a pair of white tennis shoes, a white dew rag, a can of pepper spray, and a black t-shirt. Porter objected only to the admission of the pillowcase; he did not the object to the items contained inside the pillowcase.

The same is true of the pillowcase. Several of the State's witnesses testified the robber who took the money from the Bank carried it in a pillowcase. Further, Jones testified Porter instructed him to bring two pillowcases to the robbery, and he took one of the pillowcases into the Bank on the day of the robbery. The mere fact that the pillowcase and the other items found in the parking lot were not in the defendants' exclusive possession when the police detained them does not render them inadmissible. *See State v. Jackson*, 265 S.C. 278, 283, 217 S.E.2d 794, 796 (1975) (holding exclusive possession of items by accused is not required for such items to be admissible in armed robbery prosecution; the accused need only bear a distinctive relationship to the property).

Second, to the extent any of these items were improperly admitted, their admission was harmless in light of the overwhelming evidence that established Porter's guilt. *See State v. Allen*, 269 S.C. 233, 242, 237 S.E.2d 64, 68 (1977) (holding overwhelming proof of guilt rendered harmless the admission of the evidence in question). In this case, the money found in the Taurus contained the bait money that was stolen from the Bank. Furthermore, surveillance video from the Bank showed three men in dark clothing and ski masks exit the Bank with a pillowcase filled with money and get into a grey Ford Taurus. When the defendants were arrested, they were wearing dark clothes, and they were driving a grey Ford Taurus in which the police found a pillowcase filled with money, ski masks, and other dark clothing. Finally, Laws and Young both testified in specific detail as to Porter's involvement in the robbery.

Accordingly, we find no error in the admission of these items at trial.

### c. Exclusion of Porter from Bench Conference

Porter argues the trial court erred in excluding him from a bench conference during jury selection. We believe this issue is not preserved for review.

The general rule of issue preservation is if an issue was not raised to and ruled upon by the trial court, it will not be considered for the first time on appeal. *State v. Dunbar*, 356 S.C. 138, 142, 587 S.E.2d 691, 693–94 (2003).

Imposing this preservation requirement is meant to enable the trial court to rule properly after it has considered all the relevant facts, law, and arguments. *I'On v. Town of Mt. Pleasant*, 338 S.C. 406, 422, 526 S.E.2d 716, 725 (2000). A contemporaneous objection is required to preserve issues for direct appellate review. *State v. Carlson*, 363 S.C. 586, 595, 611 S.E.2d 283, 287 (Ct.App.2005). Issues not raised and ruled upon in the trial court will not be considered on appeal. *Humbert v. State*, 345 S.C. 332, 338, 548 S.E.2d 862, 866 (2001).

During jury voir dire and selection, the trial court stated, "Let me ask counsel to come up here and Mr. Porter, I'll ask Mr. Jamison to tell you what I mention up here."[6] The court then held a conference in Porter's absence. However, Porter did not make a contemporaneous objection to his exclusion. Consequently, we believe this issue is not preserved for our review.[7]

### d. Kidnapping Charge

 Porter argues the trial court erred in refusing to instruct the jury if they found Porter guilty of armed robbery, then in order for them to also find him guilty of kidnapping, they would have to find Porter did something more than constrain the bank employees and customers for the purposes of robbing them. In other words, the jury could not base a conviction for kidnapping on the restraint of the employees and customers that was incidental to the armed robbery. We disagree.

 Generally, the trial judge is required to charge the current and correct law of South Carolina. *State v. Zeigler,*

---

6. Mr. Jamison was counsel for Porter's co-defendant, Young.

7. Porter urges this court to adopt the reasoning of the First Circuit Court of Appeals in *Oses v. Comm. of Mass.*, 961 F.2d 985 (1st Cir.1992). In that case, the court found the appellant's Sixth Amendment right of pro se representation was violated due to his exclusion from over seventy bench and lobby conferences. *Id.* at 986. However, *Oses* is distinguishable because Oses actually moved to be admitted to any bench or lobby conferences held during the trial. *Id.* In this case, neither Porter nor his standby counsel moved to be admitted to any bench conferences either before or during the trial.

364 S.C. 94, 106, 610 S.E.2d 859, 865 (Ct.App.2005). Pursuant to section 16-3-910 of the South Carolina Code (Supp.2009), a person is guilty of kidnapping if he "unlawfully seizes[s], confine[s], inveigle[s], decoy[s], kidnap[s], abduct[s] or carr[ies] away any other person by any means whatsoever without authority of law, except when a minor is seized or taken by his parent, . . . ." Kidnapping is a continuous offense that commences when one is wrongfully deprived of freedom and continues until freedom is restored. *State v. Tucker*, 334 S.C. 1, 13, 512 S.E.2d 99, 105 (1999). Armed robbery is defined as the felonious or unlawful taking of money, goods, or other personal property of any value from the person of another or in his presence by violence or by putting such person in fear. *State v. Gourdine*, 322 S.C. 396, 398, 472 S.E.2d 241, 241 (1996).

Logically, in order to commit armed robbery, an assailant must constrain his victim's activities in some way; otherwise, the victim could simply walk away. The issue here is whether the same act of constraining the employees and customers that was necessary to commit the armed robbery could also be the basis for a kidnapping conviction.

Our supreme court has held "[w]hen a single act combines the requisite ingredients of two distinct offenses, the defendant may be severally indicted and punished for each." *State v. Steadman*, 216 S.C. 579, 589, 59 S.E.2d 168, 173 (1950). The question of whether an act of confinement can constitute kidnapping when that confinement is incidental to the commission of another crime was raised in *State v. Hall*, 280 S.C. 74, 310 S.E.2d 429 (1983). In that case, the victim was abducted at knifepoint as she placed a call from a phone booth. *Id.* at 75, 310 S.E.2d at 430. The perpetrator forced the victim to walk to an adjacent pool area where he sexually assaulted her and forced her to walk to different locations around the pool. *Id.* At each location, the perpetrator assaulted the victim. *Id.* On appeal of his conviction for assault and battery of a high and aggravated nature, first degree criminal sexual conduct, and kidnapping, Hall argued the trial court erred in failing to charge the jury that in order to establish kidnapping, the State must prove the confinement of the victim was more than

incident to the commission of another crime. *Id.* at 77, 310 S.E.2d at 431. Our supreme court disagreed, holding the restraint of the victim constituted kidnapping "regardless of the fact that the purpose of the seizure was to facilitate the commission of a sexual battery." *Id.* at 78, 310 S.E.2d at 431.[8]

In this case, the State presented voluminous testimony from Bank employees and customers that they were confined while the robbery was taking place. Under *Hall*, that single act of confinement could support a finding of kidnapping regardless of whether it was merely incidental to the commission of the armed robbery. Moreover, the testimony established there were people in the Bank who were being confined against their will but were not being robbed. We believe this act of confining the customers would support the kidnapping conviction independently of the confinement required to commit the armed robbery.

Accordingly, we find no error in the trial court's refusal to issue the kidnapping charge that Porter requested.

## CONCLUSION

For the foregoing reasons, the decision of the trial court is

**AFFIRMED.**[9]

SHORT, and LOCKEMY, JJ., concur.

---

8. Interestingly, the South Carolina rule appears to be the minority view among other jurisdictions that have considered this issue. *See State v. Anthony*, 817 S.W.2d 299, 305 (Tenn.1991) (citing to at least fifteen states' appellate court decisions on this issue and stating that "[b]y an overwhelming margin, the majority view in other jurisdictions is that kidnapping statutes do not apply to unlawful confinements or movements incidental to the commission of other crimes"); *see also* Model Penal Code § 212.1 (2001) (requiring movement over a substantial distance or confinement for a substantial period of time).

9. We decide this case without oral argument pursuant to Rule 215, SCACR.