**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
In The Court of Appeals

The State, Respondent,

v.

Antwan McMillan, Appellant.

Appellate Case No. 2011-199106

Appeal From Colleton County
Perry M. Buckner, Circuit Court Judge

Unpublished Opinion No. 2013-UP-317
Heard May 8, 2013 – Filed July 10, 2013
Withdrawn, Substituted, and Refiled September 25, 2013

**AFFIRMED**

Appellate Defender Kathrine Haggard Hudgins, of Columbia, for Appellant.

Attorney General Alan McCrory Wilson and Assistant Attorney General Julie Kate Keeney, both of Columbia, for Respondent.

**PER CURIAM:** A grand jury indicted Appellant Antwan McMillan for three counts of attempted murder, three counts of attempted armed robbery, and one

count of possession of a weapon during the commission of a violent crime.[1] During the subsequent trial's *voir dire*, the trial judge asked, *inter alia*, whether any potential juror: (1) was a member of a law enforcement agency; (2) was related to, or had a close relationship with, any of the named witnesses; or (3) was biased, prejudiced, or otherwise unable to give either party a fair trial. Based upon the responses, the trial judge excused a few panel members and, thereafter, McMillan utilized four of his five allocated strikes. Among the seated jurors was Juror 102 (Juror).

After three witnesses testified, the trial judge informed counsel, *in camera*, about a note he received from Juror expressing concern about her qualification, in light of her husband's employment as a reserve deputy. The trial judge called in Juror; Juror confirmed her husband was a reserve deputy and that she had not discussed the case with him. The trial judge then asked Juror if her husband's employment affected her ability to give either party a fair and impartial trial. Juror responded, "No, it wouldn't," and was allowed to return to the jury room.

Defense counsel then objected to Juror's continued service, noting the juror information sheet, which the Clerk's Office prepared, listed the occupation of Juror's spouse as only "Environmental Health Management." Defense counsel further contended that he would have utilized McMillan's strikes differently had he known Juror's husband was a reserve deputy. Shortly thereafter, the trial judge verified that Juror did fully disclose her husband's employment on the *juror questionnaire* as including both "Environmental Health Management" and "reserve deputy," but "the Clerk's Office didn't transmit everything" that Juror filled out on her *juror questionnaire* when the Clerk's Office provided counsel with the *juror information sheet*. The trial judge then declined to excuse Juror due to this "Scri[ve]ner's error," noting that defense counsel did not request any *voir dire* question about spousal employment and that a compilation of information from the juror questionnaires was available, upon request, from the Clerk's Office.

The jury subsequently convicted McMillan on three counts of assault and battery in the first degree (a lesser-included offense), three counts of attempted armed robbery, and one count of possession of a weapon during the commission of a violent crime. McMillan was sentenced to thirty years' incarceration. This appeal followed.

---

[1] The State tried McMillan and David Jakes together. Jakes was indicted for three counts of attempted murder, three counts of attempted armed robbery, and one count of possession of a weapon during the commission of a violent crime.

# LAW/ANALYSIS

McMillan alleges the trial judge erred in refusing to excuse Juror and replace her with an alternate because, had he known Juror's husband was a reserve deputy, he would have exercised his peremptory challenges differently. Thus, McMillan essentially argues that because he would have been permitted to exercise a peremptory strike against Juror, even if she was impartial, based solely upon the occupation of Juror's husband, the omission of such alleged material information constituted prejudice that required replacing Juror with an alternate when the information later came to light.

Notably, McMillan cites no authority for the specific proposition that a trial court abuses its discretion in not removing a juror when a defendant contends he would have exercised his peremptory challenges differently had he known "material," but previously omitted, facts about any particular juror, regardless of that juror's professed impartiality. Because McMillan cites no authoritative support for his specific contention, we proceed to determine solely whether Juror was impartial. *See State v. Porter*, 389 S.C. 27, 35, 698 S.E.2d 237, 241 (Ct. App. 2010) (requiring an appellant to cite authority in "specific support of his assertion"). Thus, to the extent Juror was impartial, the trial court did not err in refusing to excuse Juror.

Section 14-7-1020 of the South Carolina Code (Supp. 2012) requires a trial judge, upon motion of either party, to determine whether a juror is impartial:

> The court shall, on motion of either party in the suit, examine on oath any person who is called as a juror to know whether he is related to either party, has any interest in the cause, has expressed or formed any opinion, or is sensible of any bias or prejudice therein . . . If it appears to the court that the juror is not indifferent in the cause, he must be placed aside . . . and another must be called.

*Accord State v. Cochran*, 369 S.C. 308, 321, 631 S.E.2d 294, 301 (2006) (citing section 14-7-1020). While such determinations are within the sound discretion of the trial judge, "[t]here is no rule of the common law, nor is there a statute disqualifying a juror on account of his relationship to a witness, either by affinity or consanguinity, within any degree." *State v. Burgess*, 391 S.C. 15, 18, 703

S.E.2d 512, 514 (Ct. App. 2010) (citation omitted); *accord State v. Mercer*, 381 S.C. 149, 158, 672 S.E.2d 556, 560-61 (2009).

Accordingly, the mere fact that a juror's spouse is a law enforcement officer, who is not involved in the case, does not, in and of itself, render a juror biased and, thus, unable to serve on a jury; rather, the crux of that determination is whether it "appears to the court that the juror is not indifferent in the cause." *See* § 14-7-1020 (stating the trial judge must determine whether a proposed juror is related to either party or is otherwise interested in, formed an opinion about, or is biased or prejudiced toward a party). Moreover, even jurors related by affinity or consanguinity to a testifying witness or those who closely knew the putative victim of a crime are not, absent an inability to maintain impartiality, unqualified. *See State v. Wells*, 249 S.C. 249, 259-60, 153 S.E.2d 904, 909-10 (1967) (finding a juror who directly employed victim qualified); *Burgess*, 391 S.C. at 18, 703 S.E.2d at 514 ("There is no rule of the common law, nor is there a statute disqualifying a juror on account of his relationship to a witness, either by affinity or consanguinity, within any degree." (citation omitted)).

In the instant matter, Juror was unrelated to the defendants and the potential witnesses, and she did not know the victims; she was merely related to a non-testifying law enforcement officer. Furthermore, once the trial judge learned Juror's husband was a reserve deputy, he asked Juror whether her husband's employment would "in any way affect [her] ability to give the [State] or [McMillan] . . . a fair and an impartial trial." Juror confirmed "it wouldn't." Because Juror appeared neither biased nor partial, the trial court did not err in finding Juror appeared impartial, despite her husband's status as a reserve deputy.

Additionally, because Juror did not conceal any information, partiality cannot be imputed to her on such a basis. *State v. Woods*, 345 S.C. 583, 588, 550 S.E.2d 282, 284 (2001) (recognizing that a court may infer that a juror who intentionally *conceals* information inquired into is not impartial). "[I]ntentional concealment occurs when the question presented to the jury on *voir dire* is reasonably comprehensible to the average juror and the subject of the inquiry is of such significance that the juror's failure to respond is unreasonable." *Id*.

At the outset, Juror disclosed her husband's status as a law enforcement officer on her self-completed *juror questionnaire*. Thus, Juror unquestionably did not conceal her husband's occupation at this phase of the jury selection process. Additionally, the trial judge asked no question during *voir dire* that required Juror to respond with her husband's occupation. While the trial judge did ask whether

any potential juror was a member of law enforcement or was related to or a close personal friend of the named potential witnesses, which did include some law enforcement officers, neither inquiry required Juror to disclose the employment status of her non-testifying husband.  Moreover, while McMillan could have requested the trial judge to ask whether any panel members were related to law enforcement officers, McMillan concedes he made no such request.  Because no *voir dire* question required Juror to respond with her husband's occupation, no concealment occurred and, thus, it cannot be inferred that juror was not impartial.[2]  *See id.* at 587, 550 S.E.2d at 284 (requiring a new trial when an identified *concealment* of information (a) was intentional and (b) would have supported a challenge for cause or would have been a material factor in the use of peremptory challenges).  "As we find no intentional concealment on Juror's part, we need not further determine whether the information would have been a material factor in the exercise of . . . peremptory strikes."  *State v. Guillebeaux*, 362 S.C. 270, 276, 607 S.E.2d 99, 102 (Ct. App. 2004).  Hence, the trial court did not err in refusing to dismiss Juror and to replace her with an alternate.

## CONCLUSION

Based on the foregoing, the decision of the circuit court is

**AFFIRMED.**

**FEW C.J., and GEATHERS and LOCKEMY, JJ., concur.**

---

[2] Both parties conceded in their briefs that juror concealment did not exist.