

# In the Missouri Court of Appeals
# Eastern District
### DIVISION ONE

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | No. ED102759 |
| | ) | |
| Respondent, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| vs. | ) | |
| | ) | Hon. Margaret M. Neill |
| JAMES M. SANDERS, | ) | |
| | ) | Filed: |
| Appellant. | ) | February 23, 2016 |

James M. Sanders appeals from the judgment entered on his conviction for robbery in the second degree after a jury trial. We affirm.

Sanders was charged with robbery in the first degree for a 2012 bank robbery. He was determined competent to stand trial after a psychiatric examination. Sanders chose to represent himself, and standby counsel was appointed. According to the evidence at trial—the sufficiency of which is not challenged on appeal—Sanders walked into Lindell Bank and handed the teller a note. The note stated that Sanders had a gun and directed the teller to hand over all the money. The teller handed Sanders the money, then Sanders took the note back and left the bank. During this short interaction, Sanders had his hands where the teller could not see them. Based on the note, the teller assumed Sanders had a weapon. Sanders testified at trial and admitted that he gave the teller a note and took the money, but claimed he could not remember what the note said and denied that he intended to hurt anyone or take the money forcibly. The jury found Sanders guilty of the

lesser-included offense of robbery in the second degree, and he was sentenced as a prior and persistent offender to 10 years imprisonment.

On appeal, Sanders claims two errors relating to statements the prosecutor made during voir dire: that the prosecutor's reference to Sanders being in a subversive anti-government organization was an impermissible reference to uncharged bad acts and that the prosecutor's repeated comments about Sanders's decision to proceed pro se violated his Sixth Amendment right to represent himself. Neither claim has merit.

Shortly after voir dire began, the prosecutor raised the issue of Sanders's pro se status:

> I think at this point it would make sense to talk about the fact that the defendant is sitting here unrepresented or without counsel at this point.
>
> At this point, the defendant has chosen to proceed without an attorney. He has chosen to proceed on his own behalf. And because of that, he is going to be held to the same standards that a lawyer would be held. He's going to be held to the same rules. He's going to be held to the same—to be expected to have the same knowledge as a lawyer.
>
> Now there are many who I am sure are sitting there thinking, that is a very bad idea. That is a terrible idea. Should not proceed to trial without a lawyer. Absolutely. And that is a fair statement. However, it is his absolute right to proceed without counsel. If he wanted counsel and he hired counsel, he could have it. If he wanted counsel and he could not afford counsel, counsel would be appointed for him. He could have a lawyer. He would have a lawyer if he wanted one.

The prosecutor then pointed out that the court had appointed standby counsel who would be there throughout the trial in case Sanders changed his mind. Then he again pointed out Sanders's "absolute right" to represent himself, but clarified:

> That does not affect my job as a prosecutor to bring forth evidence. That does not affect your job as jurors to evaluate the evidence fairly and make a decision based on what you hear and see in court.

The prosecutor then asked if anyone would have a hard time finding someone guilty who had decided to represent himself. One person responded that it was odd, and the prosecutor agreed, but pointed out that the decision must be respected nonetheless. The prosecutor also explained that the State's burden of proof was the same regardless of whether Sanders had an attorney or not. Another person said the situation seemed unfair because Sanders was like a regular person going against a "trained fighter." To that the prosecutor responded:

> And the reality is, and that's why I think most people would say this is a very bad idea. I'm not going to sugar-coat it. I've been a lawyer since 1998. I have done this job for over 15 years. I have to assume that I know more about the law, especially criminal procedure, and I understand that. But it's his right to proceed as he wants, and this is how he's chosen to proceed.

Others expressed concern as to why Sanders chose to represent himself, a question the prosecutor said he could not answer and had no control over whether Sanders shared that information. When another person said Sanders's choice raised questions as to Sanders's judgment, the prosecutor responded that the jury would be asked to make a decision based solely on the evidence that is presented in court.

The prosecutor next brought up that the jury "may hear" that Sanders considers himself part of the sovereign citizen's movement, a group that believes they do not fall under the laws of the United States and are bound by their own laws. When concern was expressed about Sanders's decision-making process, the prosecutor stated that his job was to present the evidence fairly and let the jury decide what happens:

> If the defendant chooses to make decisions, and chooses to obstruct, and chooses to delay, those are the decisions that he makes on his own behalf. They don't affect my judgment or my job. Does everyone understand that?

3

It doesn't affect the evidence that's going to come forward, which is really what I'm going to ask you to focus on. My opinion doesn't matter here. Yours does. The 12 people who sit in the box, that's whose opinion matters in this case. The decision you make, the evaluation of the evidence, your opinion matters.

If you're asking me if I think this is a terrible idea, absolutely, this is a terrible idea. But I cannot change that. I have to bring the evidence. I have to bring the witnesses in, and I will do it.

Then the prosecutor asked for everyone to promise that they would "judge this case on the evidence and not on the fact that the defendant has chosen to represent himself." Later, after several people raised the issue again, the prosecutor again reiterated that this was Sanders's choice:

We talked about the idea that the defendant has that absolute right to represent himself, and he's choosing to. In choosing to do so, he is going to be treated just as if he were a lawyer with the same training and experience as any other lawyer that came before the Court. He has to play by the same rules and follow the same rules of evidence. Again, that's why I said it's a terrible idea. From this side, I cannot control his absolute right to make that decision.

Sanders then conducted his own brief voir dire, during which he told the jury "I truly don't understand and actually know exactly what I can and I cannot do here," though he admitted it was his choice to represent himself. He also asked the jury to base their judgments on "factual evidence."

Outside the presence of the jury, Sanders consulted with standby counsel before proceeding with jury selection. When asked if Sanders had any objection to the prosecutor's motion to strike the person who indicated she needed to know why Sanders chose to represent himself, Sanders responded yes and stated "The point of the prosecutor bringin' up me being pro se, it shouldn't have been said at all." The motion to strike was sustained. Then, when asked if Sanders had any motions to strike of his own, he

4

indicated that he had an objection to the prosecutor telling the jury he was "obstructin' justice. That was not an issue at trial. It's not evidence that will be introduced and it's very prejudicial to me." The court overruled that objection.

We begin our analysis by noting that at no point during the voir dire itself did Sanders make any objection to any of the comments made by the prosecutor nor did he ask the court to take any corrective action in regards thereto. Because there was no contemporaneous objection made to the prosecutor's reference to the sovereign citizen's movement, the claim that the comment was an impermissible reference to uncharged bad acts can only be reviewed for plain error. Sanders has wholly failed to establish any prejudice resulting from this comment, much less the manifest injustice or miscarriage of justice required to reverse for plain error on this ground. The overwhelming evidence—including Sanders's admissions—supported the guilty verdict on the lesser offense of second-degree robbery. There is no indication that the verdict was a result of any inflamed prejudices resulting from this one reference to Sanders's possible association with an anti-government organization. Point denied.

Likewise, we find no constitutional violation in the prosecutor's comments about Sanders's decision to represent himself. The Sixth Amendment right to counsel embodies a correlative right to dispense with counsel's help. State v. Black, 223 S.W.3d 149, 153 (Mo. banc 2007) (citing Faretta v. California, 422 U.S. 806, 814, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975)). This right to self-representation applies to the states through the Due Process Clause of the Fourteenth Amendment and prevents a state from forcing unwanted counsel upon a defendant. Black, 223 S.W.3d at 153. Denial of a defendant's right of self-representation is structural error, and accordingly it cannot be harmless error.

5

Id. (citing McKaskle v. Wiggins, 465 U.S. 168, 177 n. 8 (1984)); see also State v. McMillon, 436 S.W.3d 663, 667(Mo. App. E.D. 2014).[1]

The right to appear pro se exists "to affirm the dignity and autonomy of the accused." McKaskle, 465 U.S. at 176-77. In determining whether that right has been respected, the primary focus must be on whether the defendant had a fair chance to present his case in his own way. Id. at 177; see also State v. Armentrout, 8 S.W.3d 99, 106 (Mo. banc 1999).

> A defendant's right to self-representation plainly encompasses certain specific rights to have his voice heard. The pro se defendant must be allowed to control the organization and content of his own defense, to make motions, to argue points of law, to participate in voir dire, to question witnesses, and to address the court and the jury at appropriate points in the trial.

McKaskle, 465 U.S. at 174. The pro se defendant is entitled to "preserve actual control over the case he chooses to present to the jury." Id. at 178. Moreover, the pro se defendant is entitled to the perception that he is in fact representing himself. Id. This affirms his "individual dignity and autonomy." Id. (concluding that standby counsel's limited participation in defendant's trial did not infringe on this right).

Nothing the prosecutor said impinged on Sanders's Sixth Amendment rights in this case. The prosecutor's negative opinion about Sanders's decision to proceed pro se did not interfere in any way with Sanders's actual control over his defense. Sanders was allowed to and did control the organization and content of his defense, made motions and objections, argued about the law, participated in voir dire and questioned witnesses. Nor

---

[1] Though structural errors cannot be harmless, it has not yet been resolved whether structural errors automatically require reversal when the error was not properly preserved; that is, whether an unpreserved structural error would still be subject to the plain error analysis. See Puckett v. United States, 556 U.S. 129, 140-41 (2009). Because we find no error at all, we need not address this issue.

could there have been any perception that Sanders was not representing himself in this case given the extensive dialogue between the prosecutor and the venire panel regarding Sanders's pro se status. Moreover, while the prosecutor questioned the wisdom of Sanders's choice to represent himself, he also repeatedly reminded everyone that regardless of his or anyone else's opinion, this was Sanders's choice to make and the case must be decided on the evidence only. The prosecutor's opinion may not have been necessary to achieve the goal of vetting prospective juror's sympathies for an unrepresented defendant, but his comments did not cross the line into a deprivation of constitutional rights.

Sanders cites <u>Oses v. Commonwealth of Massachusetts</u> for the proposition that where a prosecutor repeatedly disparages a pro se defendant, and the court does not curb or correct the behavior, the court has nullified the defendant's right to self-representation. 961 F.2d 985 (1st Cir. 1992). <u>Oses</u> is distinguishable because in that case the demeaning and belittling comments made by the prosecutor about the defendant and his pro se representation were only part of a host of problems at trial that collectively amounted to a violation of Sixth Amendment rights: the defendant was excluded from over seventy sidebar conferences, he was restricted from movement by certain security measures (including at times leg irons, manacles and a mouth gag) and frequent disparaging sarcastic and damaging comments by the trial judge that amounted to a "wholesale judicial rejection of the validity of [the defendant's] pro se defense." <u>Id</u>. at 986. It was conceded in that case that the prosecutor's comments standing alone would not have violated the defendant's constitutional rights. <u>Id</u>. (adopting reasoning of the district court in Oses v. Commonwealth of Massachusetts, 775 F.Supp. 443 (D. Mass. 1991) granting

7

defendant conditional writ of habeas corpus); see also Armentrout 8 S.W.3d at 106-07 (distinguishing Oses from case where the court had one ex parte meeting, which did not diminish pro se defendant's control over that case in any significant way). Likewise, here, the prosecutor's comments were far less disparaging than those made in Oses and, in the context of the rest of the trial, did not interfere with Sanders's rights.

Because the prosecutor's comments in voir dire were proper, there was no structural error and no error in terms of the trial court's refusal to take action sua sponte or upon Sanders's "objections" to those comments.[2] Point denied.

The judgment is affirmed.

ROBERT G. DOWD, JR., Presiding Judge

Mary K. Hoff, J. and
Roy L. Richter, J., concur.

---

[2] We question whether Sanders's remarks during the conference on motions to strike even constituted proper "objections" to the alleged violation of a constitutional right and whether they were timely given that they were not contemporaneous with the allegedly improper comments. Regardless, there being no error at all, we need not decide whether the objections were properly preserved.