**STATE of Missouri, Respondent,**

v.

**Charles E. CHAMBERS, Appellant.**

**No. ED 93538.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Nov. 30, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied Jan. 10, 2011.

Application for Transfer
Denied March 1, 2011.

Gwenda R. Robinson, Assistant Public Defender, St. Louis, MO, for appellant.

Shaun J. Mackelprang, Assistant Attorney General, Jefferson City, MO, for respondent.

PATRICIA L. COHEN, Judge.

### Introduction

Charles Chambers (Defendant) appeals the judgment of conviction entered after a jury found him guilty of robbery in the first degree and armed criminal action. Defendant claims the trial court erred in: (1) overruling Defendant's request for a mistrial when the prosecutor asked Defendant why he did not inform the police that he found the victim's cash on the sidewalk; (2) submitting a jury instruction that listed all of Defendant's prior offenses; (3) overruling Defendant's objection that the prosecutor improperly personalized her closing argument; and (4) entering a written judgment and sentence that materially differed from its oral pronouncement of sentence. The judgment is modified in part and affirmed as modified.

### Factual and Procedural Background

At approximately 1:20 a.m. on December 17, 2006, Tim Pappas, the owner of the Chrome Bar in the City of St. Louis, and four female employees were cleaning and closing up when two men entered the bar and robbed Mr. Pappas at gunpoint. The two men's faces were covered, but the victims could see that they were Caucasian, and one appeared to be significantly older than the other. The older of the two men appeared to be in his 50s or 60s and had gray facial hair. The older man pointed a gun at Mr. Pappas and the three employees in the bar area and ordered them to lie face-down on the floor.

One of the men removed Mr. Pappas's wallet from his back pants pocket and then ordered Mr. Pappas to hand him the cash that Mr. Pappas carried in his front pants pocket. When Mr. Pappas lifted and turned his body to remove the cash from his front pocket, the man hit Mr. Pappas on the side of the head with his gun, causing Mr. Pappas' ear to bleed. Mr. Pappas then handed the man the bundle of cash without looking at him. This bundle of cash was secured by a rubber band and contained approximately $500, as well as a couple pieces of paper on which Mr. Pappas had written personal information, including his federal and state tax identification numbers.

Kathy Mathes, a waitress at the Chrome Bar, was in the restroom when the two men entered the bar. When she opened the bathroom door and saw a man holding a gun, she ran out the back door of the bar. The back door beeped when it opened. At this point, one of the men announced "a change of plans," and herded Mr. Pappas and the three employees into a storage room. The two men barricaded the storage room door with a table. Before leaving, they took Ms. Mathes' purse, which had been sitting on the bar, and a petty cash box containing approximately $200.

Meanwhile, Ms. Mathes ran to the intersection of Gravois and Delor, where she waved down a police car and told Officer Douglas Reinholz that the Chrome Bar was being robbed. When Officer Reinholz and another officer entered the bar, the victims were pushing their way out of the barricaded storage room door.

Officer Kyle Bowen was on patrol when he heard the call that the Chrome Bar had been robbed and "a description went out for two men running east." At approximately 1:45 a.m. on December 17, 2006, Officer Bowen arrested John Kitchell, who was running east on Itaska about nine blocks from the Chrome Bar.

Around the same time, Officer Michael Robertson, a canine handler with the St. Louis City Police Department, took his police dog to the 3900 block of Itaska where two men had been seen running. From there, Officer Robertson's dog tracked and located Defendant hiding beneath a recycling bin in a backyard nine or ten blocks from the Chrome Bar. Officer Robertson brought Defendant back to the Chrome Bar for a show-up. None of the victims were able to positively identify Defendant, but two of the victims told police that they recognized Defendant's facial hair. Officer Reinholz searched Defendant's person and found the bundle of money that belonged to Mr. Pappas.[1] Later that morning, police recovered Mr. Pappas's wallet, Ms. Mathes's purse, a metal cash box, two guns, gloves, a hat, and a sweatshirt in a backyard about six blocks from the Chrome Bar.

The State charged Defendant with one count of robbery in the first degree and one count of armed criminal action. At Defendant's jury trial, Mr. Pappas and the three other victims that Defendant held at gunpoint testified for the State, as did various police officers, forensic scientists, and firearms examiners involved in the investigation.

In his defense, Defendant offered the testimony of a friend, who stated that Defendant was staying at her house the night of the robbery. Defendant took the stand and stated that, at around 1:00 or 1:30 a.m. on December 17, 2006, he left his friend's house to "go for a walk." As he was walking down Itaska, a man ran out of a gangway and passed him on the sidewalk. When Defendant neared the gangway, he saw a bundle of money wrapped in a rubber band and picked it up. Shortly thereafter, he was arrested. Defendant told the

officers that the money he carried came from SSI checks and working "odd jobs."

The jury found Defendant guilty on both counts. The trial court sentenced Defendant, as a prior and persistent offender, to consecutive terms of twenty years' imprisonment for first-degree robbery charge and ten years' imprisonment for armed criminal action. Defendant appeals.

### Discussion

█ In his first point on appeal, Defendant claims that the trial court erred in overruling his request for a mistrial when the prosecutor asked Defendant during cross-examination why he did not inform the police that he found Mr. Pappas's money on the sidewalk. Defendant contends that the prosecutor's inquiry improperly elicited evidence of Defendant's post-arrest silence for the purpose of impeaching Defendant's testimony and permitted the jury to draw an improper adverse inference from Defendant's post-arrest silence.

█ "The trial court has discretion to grant a mistrial, which is a drastic remedy and should be employed only in the most extraordinary circumstances." *State v. Taylor*, 298 S.W.3d 482, 512 (Mo. banc 2009). "Because the trial court is in a better position to evaluate the prejudicial effects of the challenged behavior, our review is limited to whether, as a matter of law, the trial court abused its discretion in refusing to grant a mistrial." *State v. Bowler*, 892 S.W.2d 717, 719 (Mo.App. E.D.1994).

█ The State may not use an accused's silence, at the time of arrest and after receiving *Miranda* warnings, for impeachment purposes. *Doyle v. Ohio*, 426 U.S. 610, 618, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976). However, the United States Supreme Court has held that, in the absence

---

1. A test of the bloodstains on one of the bills matched Mr. Pappas's DNA.

of the sort of affirmative assurances embodied in the *Miranda* warnings, a State does not violate due process of law by cross-examining a defendant as to his post-arrest silence when that defendant chooses to take the stand. *Fletcher v. Weir*, 455 U.S. 603, 607, 102 S.Ct. 1309, 71 L.Ed.2d 490 (1982). The Court reasoned that "a State is entitled, in such situations, to leave to the judge and jury under its own rules of evidence the resolution of the extent to which postarrest silence may be deemed to impeach a criminal defendant's own testimony." *Id.*

 Under Missouri law, the State may use a criminal defendant's immediate post-arrest, pre-*Miranda* warning silence for purposes of impeachment "when a neutral expectancy of an exculpatory statement exists as a result of a defendant's testimony and defendant's silence is probative of inconsistencies in that testimony." *State v. Antwine*, 743 S.W.2d 51, 69 (Mo. banc 1987). Accordingly, where a defendant's testimony raises "a natural and reasonable expectation that he would have made an exculpatory statement at the time of his arrest" and his silence was not the result of an exercise of a constitutional right, the State may impeach the defendant's testimony with questions about his silence at the time of his arrest. *Id.*; *see also State v. Myers*, 997 S.W.2d 26, 31 (Mo.App. S.D.1999).

In the instant case, Defendant chose to take the stand and testify in his own defense. During his direct examination, Defendant stated that, on the night of the robbery, he found the stolen money on the sidewalk and put it in his pocket. Defendant went on to explain that, at the time of his arrest, he was carrying two bundles of money, the one he found and another that belonged to him. Defendant then volunteered: "They did ask me, both the officers asked me, where did I get this money.

And I told them I worked odd jobs, which I do down in the country, when there is something, do a little extra, and I get a SSI check." On cross-examination, the prosecutor and Defendant had the following exchange:

Q: All right. So you're walking down Itaska and you said you saw an individual running, right?

A: Yes, ma'am.

Q: And just one person running?

A: Yes, ma'am.

Q: And you said you saw him throw something?

A: I said I didn't see him throw nothing.

Q: You didn't see him throw anything?

A: I said he ran past me. I didn't see him throw nothing. When I walk up, I seen some money on the ground.

Q: So you don't know if he threw the money or not?

A: No, I don't.

Q: Where did you find the money?

A: On the sidewalk.

Q: Where on the sidewalk?

A: There's some houses here, and then when I was walking up there, I would say right there in the middle of the sidewalk.

Q: Where on the street did you find it or what street was it on?

A: I can't answer that right now.

Q: You don't know.

A: No.

Q: And you didn't tell the police anything about finding money?

A: No.

Q: Now—

A: They really didn't give me a chance.

Q: Well, you were allowed to explain about the other money you had on

you, but you didn't mention finding this money. It's just a yes or no, sir. You didn't mention that, right?

A: I didn't mention—

Q: How you found money?

A: No, I didn't mention anything.

At this point, defense counsel objected and moved for a mistrial on the grounds that the prosecutor was commenting on Defendant's post-arrest silence in violation of Defendant's constitutional rights. The trial court overruled the objection and denied the request for a mistrial.

Nothing in the record indicates, nor does Defendant allege, that Defendant received *Miranda* warnings before he told police officers that the source of the money in his pockets was odd jobs and SSI checks. Since the record does not reveal when, if ever, police issued Defendant his *Miranda* warning, we assume the warning was not issued before the time of Defendant's impugned silence.[2] *State v. Graves*, 27 S.W.3d 806, 810 (Mo.App. W.D.2000).

Also, the nature of Defendant's claim that he found Mr. Pappas' money on the sidewalk raises a reasonable expectation that he would have related that information to the police to avoid suspicion that he committed the robbery in question. *See State v. Hill*, 823 S.W.2d 98, 101 (Mo.App. E.D.1991). As a result, Defendant's silence was probative of inconsistencies in his testimony. *See Antwine*, 743 S.W.2d at 69. We therefore find that the use of Defendant's previous silence for impeachment purposes was proper, and the trial court did not err in overruling his objection. Point denied.

■ In his second point on appeal, Defendant claims the trial court erred in submitting to the jury an impeachment instruction in which the trial court "not only stated the names of the offenses for which courts had previously convicted [Defendant], but also repeated the name of each prior offense the number of times that [Defendant] had been convicted of it. . . ." Defendant contends that the instruction, labeled Instruction 9, unduly emphasized the offenses he committed and the number of times he committed them.[3]

---

**2.** For this reason, Defendant's reliance on *State v. Brooks* is misplaced. 304 S.W.3d 130 (Mo. banc 2010). In *Brooks*, the Missouri Supreme Court held that a defendant does not waive his Fifth Amendment right to remain silent when, after receiving the *Miranda* warning, he makes a general denial of culpability. 304 S.W.3d at 133–34. There the record indicated that the defendant was given the *Miranda* warning prior to exercising the right to remain silent. *Id.* at 133.

**3.** Instruction 9 provided:

If you find and believe from the evidence that defendant was convicted of the offenses of Possession of a Controlled Substance; Burglary; Possession of a controlled Substance; Operating a Vehicle without the consent of the Owner; Possession of a Controlled Substance; Carrying a Concealed Weapon; Uttering a Forged Instrument; Carrying a Concealed Weapon; Assault with Intent to do Great Bodily Harm; Operating a Motor Vehicle without Permission

of the Owner; Stealing; Stealing of a Motor Vehicle; Burglary, Stealing, Unlawful Use of a Weapon and Possession of a Controlled Substance; Burglary and Stealing; Burglary; Robbery First Degree; Burglary; Burglary; Stealing, Possession of Burglary Tools, Assault, and Burglary; Possession of a Controlled Substance; and Burglary and Stealing, you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. You must not consider such previous conviction [sic] as any evidence that the defendant is guilty of any offense for which he is now on trial.

In contrast, the impeachment instruction submitted by defense counsel and rejected by the trial court did not specify any of Defendant's prior convictions:

If you find and believe from the evidence that defendant was convicted of offenses, you may consider that evidence for the sole purpose of deciding the believability of the

 "On claims of instructional error, an appellate court will reverse only if there is error in submitting an instruction and prejudice to the defendant." *State v. Forrest*, 183 S.W.3d 218, 229 (Mo. banc 2006). "MAI instructions are presumptively valid and, when applicable, must be given to the exclusion of other instructions." *Id.*; *see also* Mo. Sup. Court Rule 28.02(c) ("Whenever there is an MAI–CR instruction or verdict form applicable under the law and Notes On Use, the MAI–CR instruction or verdict form shall be given or used to the exclusion of any other instruction or verdict form.").

MAI–CR 310.10 instructs the jury that a defendant's prior convictions may be considered for the sole purpose of deciding the defendant's credibility and the weight to be given his testimony. The instruction reads:

> If you find and believe from the evidence that defendant (was convicted of) (was found guilty of) (pled guilty to) (pled nolo contendere to) the offense of [*specify the offense* ], you may consider that evidence for the sole purpose of deciding the believability of the defendant and the weight to be given to his testimony and for no other purpose. (You must not consider such previous (conviction) (finding of guilt) (plea of guilty) (plea of nolo contendere) as any evidence that the defendant is guilty of any offense for which he is now on trial.)

MAI–CR 310.10 directs the drafter to fill in the defendant's past offenses by stating "specify offenses." MAI–CR 310.10; *State v. Cantrell*, 775 S.W.2d 319, 322 (Mo.App. E.D.1989). Neither the model instruction nor the Notes On Use suggests the drafter somehow limit or condense the recitation of the defendant's prior convictions. The

instruction given in this case falls within a reasonable interpretation of the instruction to specify offenses. *See Cantrell*, 775 S.W.2d at 322. We therefore find that the trial court did not err in submitting Instruction 9. Point denied.

 In his third point on appeal, Defendant claims the trial court erred in overruling defense counsel's objection to the prosecutor's personalization in closing argument. It is well-settled that a prosecutor may not personalize his or her argument to the jury. *State v. Storey*, 901 S.W.2d 886, 901 (Mo. banc 1995). This is because the jury must act objectively, without fear or prejudice. *State v. Raspberry*, 452 S.W.2d 169, 172 (Mo. banc 1970). "One way in which improper personalization results is when the prosecutor asks the jurors to place themselves or some other identifiable person in the shoes of the victim or at the crime scene." *Hall v. State*, 16 S.W.3d 582, 585 (Mo. banc 2000).

In closing, the prosecutor asserted that Defendant believed he could rob Mr. Pappas and his employees and avoid identification by wearing hooded sweatshirts and forcing the victims to lie on the ground. The prosecutor then said, "And you know what? When someone's facing you down on the ground and telling you not to look at them and pointing a gun at your head—." Defense counsel objected on the grounds that prosecutor was "personalizing this argument," and the trial court overruled the objection.

 "The use of the word 'you' does not automatically amount to improper personalization." *State v. Lyons*, 951 S.W.2d 584, 596 (Mo. banc 1997) (quotation omitted). Considering the prosecutor's com-

defendant and the weight to be given to his testimony and for no other purpose. You must not consider such previous convic-

tions as any evidence that the defendant is guilty of any offense for which he is now on trial.

ments in the context of her argument, we find that she was explaining the eyewitnesses' difficulty in positively identifying Defendant. She was not asking the jurors to place themselves in the position of the victims and relive the crime. *See State v. Roberts*, 948 S.W.2d 577, 595 (Mo. banc 1997); *cf. Storey*, 901 S.W.2d at 901. The trial court did not err in overruling defense counsel's objection. Point denied.

In his final point on appeal, Defendant claims the trial court plainly erred by entering a written judgment and sentence that materially differed from its oral pronouncement. At the sentencing hearing, the trial court sentenced Defendant to consecutive terms of twenty years' imprisonment for first-degree robbery and ten years' imprisonment for armed criminal action, for a total sentence of thirty years. However, the written judgment states that Defendant will serve twenty years on Count 1, consecutive to Count 1, and that he will serve ten years on Count 2, consecutive to Count 2. The result of the clerical error contained in the written judgment is "circuitous sentences, lasting to infinity, rather than the total 30–year sentence that the trial court pronounced on both counts." The State concedes the merit of this point.

When a material difference exists between the written judgment and the oral pronouncement, the oral pronouncement controls. *Hastings v. State*, 308 S.W.3d 792, 796 (Mo.App. W.D.2010). "We need not remand the case when we can appropriately correct the sentence." *State v. McGee*, 284 S.W.3d 690, 713 (Mo.App. E.D. 2009). Point granted.

### Conclusion

In light of the foregoing, we correct the judgment to reflect that the twenty-year sentence on Count 1 will run consecutive to Count 2, and the ten-year sentence on Count 2 will run consecutive to Count 1. In all other respects, Defendant's conviction and sentence is affirmed.

GARY M. GAERTNER, JR., P.J., and MARY K. HOFF, J., concur.