Chavez FOSTER, Appellant,

v.

STATE of Missouri, Respondent.

No. ED 95607.

Missouri Court of Appeals, Eastern District, Division Five.

Sept. 20, 2011.

---

Craig A. Johnston, Columbia, MO, For Appellant.

Chris Koster, Attorney General, John M. Reeves, Assistant Attorney General, Jefferson City, MO, For Respondent.

## *OPINION*

GLENN A. NORTON, J.

Chavez Foster appeals the judgment entered upon a jury verdict convicting him of first-degree assault, armed criminal action, and attempted first-degree robbery. We affirm.

## I. BACKGROUND

On August 29, 2009, shortly after 10:00 p.m., Donovan Mimbs was walking home from work when two individuals began following him. As Mimbs approached the Nico Terrace Apartment complex, one of the individuals moved in front of Mimbs, pulled out a gun, and demanded that he "give it up." Mimbs immediately froze and stared at the man and the gun. After about fifteen seconds, Mimbs began to run away. He was shot in the arm but continued to his house where his wife called the police. Soon thereafter the police arrived and asked Mimbs for a description of the man who shot him. He described the individual as a shorter black male with shoulder-length dreadlocks.

Upon hearing Mimbs' description of the man who shot him, the officers thought of Foster because of previous incidents near the Nico Terrace Apartments involving Foster. Foster had been placed on the no-trespass list for the complex and pictures of him had been disseminated to police to notify them he was banned from the complex. Officer Mudassar Malik retrieved a photo of Foster from the police records and sent the photo through picture messaging to Officer John Williams' cellular phone. The photo was a criminal mugshot taken on August 22, 2009, a week before the incident involving Mimbs.

About an hour after the shooting, Officer Williams went to the hospital where Mimbs was being treated and received permission from the doctors to speak with Mimbs after he regained consciousness. Officer Williams then showed the mugshot of Foster to Mimbs who immediately responded "that's him." Officer Williams then asked Mimbs, "is that who?," and Mimbs responded again "that's him." Officer Williams then asked, "is this the man that shot you?" and Mimbs responded "yes, that's him, that's him."

The next day, Mimbs was transported to another hospital where he was shown a photo lineup by Officer Devin Rose. The lineup consisted of six photos, including the same mugshot shown to Mimbs by Officer Williams the previous day. Mimbs again identified the photo of Foster as being the person who had shot him.

Prior to trial, Foster filed a motion to suppress the mugshot and photo lineup identifications, alleging that the circumstances surrounding them were inherently suggestive and conducive to mistaken identifications. As a result, Foster alleged any in-court identification would be tainted without any adequate independent basis. The trial court denied Foster's motion to suppress the identifications, and the matter was set for trial.

Mimbs testified at trial and identified Foster as the shooter. He also testified regarding his identification of Foster to Officer Williams at the hospital as well as the identification he made in the photo lineup conducted by Officer Rose. Foster's counsel failed to object to any of the testimony.

Officer Williams also testified at trial that Foster had been involved in "several other criminal incidents." The trial court sustained Foster's counsel's objection to this testimony and granted his request that the testimony be stricken from the record. Counsel only requested a mistrial after a subsequent recess. The request was denied. The jury was instructed to disregard all evidence stricken from the record.

During closing argument, the prosecutor referred to Foster as an "extremely violent individual who's a sociopath." He also argued that the case represented good police work because the police knew the neighborhood and who they had to watch for, and because after the police heard about the crime and the description given by Mimbs, Foster's name immediately came to the minds of the authorities.

The jury convicted Foster of first-degree assault, armed criminal action, and attempted first-degree robbery. Foster was sentenced to consecutive terms of twelve years' imprisonment on the assault count, three years on the armed criminal action count, and five years on the attempted robbery count, for a total of twenty years' imprisonment. Foster appeals.

## II. DISCUSSION

### A. The Trial Court did not Commit Plain Error in Admitting Mimbs' In–Court and Out–of–Court Identifications

In his first point on appeal, Foster claims the trial court erred in denying his motion to suppress Mimbs' in-court and out-of-court identifications of Foster and in allowing Mimbs to testify regarding these identifications. Foster contends that the police procedures were unduly suggestive when Foster's mugshot on Officer Williams' cellular phone was shown to Mimbs while in the trauma unit and when the same mugshot was used the following day in a photo lineup. Foster contends Mimbs' subsequent identifications were the result of unnecessarily suggestive police procedures which created a substantial risk of misidentification and were unreliable under the totality of the circumstances.

■ Ordinarily, appellate courts will reverse a ruling on a motion to suppress only if it is clearly erroneous and will reverse admission of testimony only if the trial court abused its discretion. *State v. Williams*, 277 S.W.3d 848, 851–52 (Mo. App. E.D.2009). However, Foster failed to preserve this claim for appeal because he did not timely object when Mimbs testified regarding the identifications at trial. *See State v. Edwards*, 280 S.W.3d 184, 188 (Mo.App. E.D.2009). Therefore, Foster's claim that the trial court erred in denying his motion to suppress and in allowing Mimbs to testify regarding the identifications may only be reviewed for plain error. *Id.* Foster will prevail on a claim of plain error only "where the alleged error establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted from the trial court error." *Id.* (quoting *State v. Johnson*, 207 S.W.3d 24, 44 (Mo. banc 2006)).

■ There is a two-prong test for determining whether identification testimony is admissible. *State v. Chambers*, 234 S.W.3d 501, 513 (Mo.App. E.D.2007). First, the court must determine whether

the pre-trial procedure was unduly suggestive. *Id.* A pre-trial identification procedure is unduly suggestive if the identification is the result of the procedures used by the police. *Id.* The procedure will not be unduly suggestive if the identification resulted from the witness's recollection. *Id.* If the procedure is not unduly suggestive, the court may admit any pre-trial and in-court identification. *Id.* Only if the procedure is found to be unduly suggestive will the court proceed to the second step and determine "whether the suggestive procedures have so tainted the identification as to lead to a substantial likelihood that the pre-trial identification was not reliable." *Id.*

■ Foster argues two pre-trial procedures were unduly suggestive. First, he claims the mugshot shown to Mimbs in the hospital was unduly suggestive because Officer Williams showed Mimbs only one photo. The Court in *State v. McElvain* was presented with a similar claim. 228 S.W.3d 592 (Mo.App. W.D.2007). In *McElvain,* the witness viewed a person stealing anhydrous from an anhydrous ammonia tank. *Id.* at 594. The police were given a description and later found the defendant, who matched the description given by the witness. *Id.* at 595. The police arrested the defendant and took a picture of the defendant during booking. *Id.* The witness was later shown only this photograph and identified defendant as the person he observed stealing the anhydrous. *Id.* On appeal, the defendant argued the identification was impermissibly suggestive because the witness was shown only one photograph. *Id.* at 601. The Western District noted that "Missouri cases have recognized that the showing of a single photograph of a defendant to a witness where there is no improper comment or activity on the part of the officer showing the photograph does not result in

impermissible suggestiveness." *Id.* (quoting *State v. McGrath,* 603 S.W.2d 518, 520–21 (Mo.1980)). Finding no improper conduct by the officer, the Court held the procedure was not unduly suggestive. *Id.* at 601–02.

Similarly, here Officer Williams showed the picture of Foster to Mimbs without saying anything. Mimbs immediately responded, "That's him," identifying the man in the picture as the person who shot him. As in *McElvain,* Foster failed to show any improper conduct by Officer Williams when he showed the photo to Mimbs. As such, the procedure was not unduly suggestive, and we need not address the reliability of the identification.

■ Foster also argues the photo lineup conducted the day after the initial identification was unduly suggestive because the same mugshot previously used in the hospital was used in the subsequent lineup procedure. The Court in *State v. Allen* was presented with a similar claim. 274 S.W.3d 514 (Mo.App. W.D.2008). In that case, the defendant challenged a witness's pre-trial identification. *Id.* at 524. The defendant challenged the identification procedure on various grounds, including the repeat use of a "mugshot" photo in a photo lineup that had previously been shown to the witness. *Id.* The Court found that "an initial identification by photo followed by a lineup identification is not per se unduly suggestive." *Id.* at 525 (quoting *Chambers,* 234 S.W.3d at 514). The repeat use of a photo in a subsequent lineup will not be suggestive if the record shows the identification was based solely on the witness's memory. *Id.*

The procedure used in *Allen* was also used in the present case. Mimbs was shown a single mugshot photo to identify Foster as the person who shot him. The same photo was then used in a photo lineup in which Mimbs again identified Foster.

Nothing in the record shows the identification was based on anything other than Mimbs' memory. As in *Allen*, this procedure was not unduly suggestive, and we will not address the reliability of the identification.

Because the pre-trial procedures were not unduly suggestive, the court properly admitted the in-court and out-of-court identifications. Accordingly, the trial court did not commit plain error in denying Foster's motion to suppress and in admitting Mimbs' in-court and out-of-court identifications of Foster. Point one is denied.

## B. The Trial Court Did Not Commit Plain Error in Denying Foster's Motion for a Mistrial

In his second and final point on appeal, Foster argues the trial court erred in refusing to grant a mistrial after Officer Williams testified that Foster had been involved in "several other criminal incidents." Foster contends this resulted in prejudice that was furthered when the prosecutor's closing argument referred to Foster as a "sociopath" and argued that Foster's name immediately came to the minds of the authorities. We disagree.

It is the responsibility of counsel to request a mistrial. *State v. Hendrix*, 883 S.W.2d 935, 945 (Mo.App. W.D.1994). If counsel fails to make such a request, it will be assumed that counsel is satisfied with the measures taken by the court. *Id.* A subsequent request for a mistrial or other additional measures is untimely. *Id.*; *see also State v. Dewey*, 86 S.W.3d 434, 443 (Mo.App. W.D.2002) (holding that the question of whether a mistrial should have been granted was not preserved for appeal where, although the defendant objected to the evidence, he did not ask for a mistrial at that time). Here, Foster's objection to Officer Williams' testimony was

sustained, and Foster was given the remedy he sought, that the testimony be stricken. Foster's subsequent request for a mistrial at the close of the testimony was untimely. As such, we will review his claim only for plain error. As previously indicated, Foster will prevail on a claim of plain error only "where the alleged error establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted from the trial court error." *Edwards*, 280 S.W.3d at 188.

Granting a mistrial "is a drastic remedy that should be employed only in extraordinary circumstances in which prejudice to the defendant can be removed in no other way." *State v. Stone*, 280 S.W.3d 111, 118 (Mo.App. E.D.2009) (quoting *State v. Harris*, 824 S.W.2d 111, 114 (Mo.App. E.D. 1992)). Here, the trial court sustained Foster's objection to Officer Williams' testimony that Foster had been involved in several other criminal incidents, and the testimony was stricken from the record. The trial court also instructed the jury to disregard anything the court ordered stricken from the record. "[P]rejudicial effect can be removed by striking the testimony and instructing the jury to disregard it." *State v. Rhodes*, 829 S.W.2d 41, 44 (Mo.App. E.D.1992).

Moreover, we find that the prosecutor's closing argument did not highlight the stricken testimony and prejudice Foster. During closing argument, the prosecutor argued that Foster's name immediately came to the minds of the authorities after they heard about the crime and the description given by Mimbs. This argument was reasonably based on evidence presented that Foster was on the no-trespass list for the apartment complex and that officers already had pictures of Foster to identify him if he went on the complex property. "A prosecutor is allowed to argue the evidence and all reasonable infer-

ences from the evidence during closing arguments." *State v. Brown,* 337 S.W.3d 12, 14 (Mo. banc 2011). Furthermore, the reference by the prosecutor that Foster is a sociopath does not relate or highlight the stricken testimony. "Without a clear demonstration based upon specific references to the record related explicitly and coherently to relevant legal authority supporting that [Foster] was actually prejudiced by [Officer Williams'] statement, this Court will not, and indeed cannot, find the trial court's denial of mistrial to have been in error." *State v. Stewart,* 296 S.W.3d 5, 13 (Mo.App. S.D.2009).

Any prejudice resulting from Officer Williams' testimony was corrected when the trial court sustained Foster's objection, struck the testimony from the record, and instructed the jury to disregard the stricken testimony. The trial court is in a better position to assess the prejudicial effect of testimony on the jury and to evaluate the proper means to cure any resulting prejudice, and we defer to its decision. *See State v. Chambers,* 330 S.W.3d 539, 542 (Mo.App. E.D.2010). Therefore, the trial court did not commit plain error in denying Foster's motion for a mistrial. Point two is denied.

### III. CONCLUSION

The judgment is affirmed.

KURT S. ODENWALD, C.J., and BEN BURKEMPER, Sp. J., concur.