

## Missouri Court of Appeals

### Southern District

### Division Two

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | No. SD34273 |
| | ) | |
| RODNEY J. GREEN, | ) | FILED: December 19, 2016 |
| | ) | |
| Appellant. | ) | |

### APPEAL FROM THE CIRCUIT COURT OF RIPLEY COUNTY

### Honorable Michael M. Pritchett, Judge

## AFFIRMED

Rodney Green's crime spree resulted in a jury trial, 13 felony convictions, and net sentences of life imprisonment plus 75 years. He does not challenge the sufficiency of the evidence, but raises four points on appeal, only two of which are preserved. We deny all points and affirm the judgment of conviction.

### Background

Viewing the record most favorably to the verdicts, **State v. Eoff**, 193 S.W.3d 366, 368 (Mo.App. 2006), Green beat on the Walsh family's door at 2:30 a.m., claiming that his truck had broken down, his children were with him (it was winter),

and he needed to use a phone.  When Mrs. Walsh cracked the door to hand out her phone, Green forced his way in, stuck a gun in her face, and demanded her truck keys. Her daughter screamed, Green fired his gun, and a struggle ensued, waking Mr. Walsh who ran to his family's aid. Green kept firing, wounding both parents, and again demanded truck keys which Mrs. Walsh surrendered.  Green took the truck and fled.

About an hour later, Green knocked at the door of his relative, Mr. Parsons, again claiming that he needed to make a call because his truck had broken down.  Mr. Parsons admitted Green, who turned on the TV but called no one, then stepped out and returned with an assault rifle.  When TV news reported that Green was wanted for a shooting, Green roughed up Mr. Parsons, bound him with a telephone cord, and fled in Mr. Parsons' truck.

We need not detail Green's unlawful entry into Ms. D___'s home later that day; or his offenses against her person; or his theft of her credit cards and car in fleeing the scene; or the manhunt, high-speed police chase, and crash that led to Green's apprehension and the recovery of evidence that, coupled with Green's confession, resulted in the charges for which Green was tried (after a jail escape and recapture) and convicted.[1]

---

[1] Count I – 30 years for first-degree robbery; Count II – 50 years for armed criminal action (ACA); Count III – life for first-degree assault; Count IV – 50 years for ACA; Count V – life for first-degree assault; Count VI – 50 years for ACA; Count VII – 30 years for first-degree robbery; Count VIII – 50 years for ACA; Count IX – 30 years for first-degree robbery; Count X – 30 years for first-degree burglary; Count XII – 75 years for attempted forcible rape; Count XIII – 75 years for forcible sodomy; Count XIV – seven years for resisting arrest.  The first five sentences run concurrent with each other; the remaining sentences run concurrent with each other; and the two groups of concurrent sentences run consecutively.

## Point I
## Admission of Identification Testimony

Green charges error in admitting Mrs. Walsh's identification of him, alleging that the pretrial identification procedure was impermissibly suggestive.

We will reverse on admission of testimony only if the trial court abused its discretion. **Foster v. State**, 348 S.W.3d 158, 161 (Mo.App. 2011). We consider evidence at both the suppression hearing and trial, viewing the record most favorably to the court's ruling. **State v. Green**, 469 S.W.3d 881, 883 (Mo.App. 2015).

We first consider whether the pretrial identification procedure was unduly suggestive; *i.e.*, was identification a product of police procedure, not witness recollection? **Foster**, 348 S.W.3d at 161-62. Unless the procedure was unduly suggestive, our analysis ends. **Id**. at 162.

The record reflects that Mrs. Walsh could and did view Green as he forced his way into her home and struggled with her. Less than an hour later, a deputy showed her Green's mugshot without mentioning his name and asked if she recognized him. Mrs. Walsh identified Green "without a shadow of a doubt" as the person who shot her and never wavered in identifying Green in later court proceedings.

Much of Green's argument consists of highlighting testimony and inferences that question the reliability of the identification. Our standard of review forbids us to so view the record. Moreover, at this stage of the analysis, we are reviewing whether *police procedure* was unduly suggestive, absent which any "factors relating to reliability of the identification go to the weight, and not the admissibility, of the witness' testimony." **Eoff**, 193 S.W.3d at 376.

3

This leaves Green's unpersuasive assertion that Mrs. Walsh should not have seen a one-photo "lineup."  Courts have rejected such complaints in the absence of police misconduct. *See Foster*, 348 S.W.3d at 162; *State v. McElvain*, 228 S.W.3d 592 (Mo.App. 2007).  Here, the sheriff agreed that full photo lineups are preferable, but he was trying to identify an active shooter at large and Mrs. Walsh was about to be flown to the hospital.  In similar exigent circumstances, show-ups[2] were deemed not unduly suggestive in *Eoff,* 193 S.W.3d at 376, and *State v. Murray*, 428 S.W.3d 705, 710 (Mo.App. 2014).  The same can be said here.

The court did not abuse its discretion in admitting Mrs. Walsh's out-of-court and in-court identifications of Green.  Point denied.

### Point II
### Motion to Sever

Green claims the court erred in refusing to sever the six offenses involving Ms. D__ for separate trial, arguing that they occurred a day after the rest and the sex crimes differed in nature from all others.

We review joinder and severance questions via two-step process.  *State v. St. George*, 497 S.W.3d 308, 311 (Mo.App. 2016).  First we consider whether joinder was proper; a question of law.  *Id*.  By statute and rule, the state could join charges of the same or similar character, or based on connected acts or transactions or parts of a common scheme or plan.  *Id*. (citing § 545.140.2 and Rule 23.05).  This plainly authorized joinder of all counts arising from Green's two-day crime spree.  *Compare*

---

[2] "A show-up occurs when police arrange for a one-on-one confrontation between the suspect and a witness to a crime shortly after the time of the crime." *State v. Ivy*, 455 S.W.3d 13, 20 n.3 (Mo.App. 2014).

*State v. McDonald*, 321 S.W.3d 313, 318-19 (Mo.App. 2010) (seven offenses over four days, defendant drove stolen vehicles between crime scenes); *State v. Moore*, 745 S.W.2d 224, 227 (Mo.App. 1987) (16 offenses, six victims, six different dates spanning three calendar years).

Next, we "consider whether the trial court abused its discretion in failing to sever the charges." *St. George*, 497 S.W.3d at 312. It took "'a particularized showing of substantial prejudice' in order to obtain a severance." *McDonald*, 321 S.W.3d at 320 (quoting Rule 24.07(b)). Green's motion alleged as prejudice that jurors "would likely consider evidence of guilt on one charge as evidence of guilt on another charge," and Green "may wish to testify on one charge, but not the other." Similar allegations were found insufficient in *State v. Warren*, 141 S.W.3d 478, 488-89 (Mo.App. 2004), and *State v. Bechhold*, 65 S.W.3d 591, 596-97 (Mo.App. 2002), so we find no abuse of discretion in denying Green's motion. Point denied.

## Point III
## Judicial Disqualification

Green complains that the trial judge should not have handled this case because he had once represented Green, apparently in a traffic matter, during his private practice. Green concedes that this claim is not preserved and seeks plain error review.

Plain error is used sparingly and limited to error that is evident, obvious, and clear. *State v. Campbell*, 122 S.W.3d 736, 739-40 (Mo.App. 2004). Not all prejudicial or "reversible" error can be deemed plain error. *State v. Dowell*, 25 S.W.3d 594, 606 (Mo.App. 2000). Green's "much greater" burden here is not merely

5

to show prejudice, but manifest injustice or a miscarriage of justice, which in this context means outcome-determinative error. **Campbell**, 122 S.W.3d at 740.

"The prior representation of a party by a judge or his law firm with regard to a matter unrelated to the litigation before him does not mandate disqualification, and a judge has an affirmative duty not to disqualify himself unnecessarily." **Cain v. Hershewe**, 760 S.W.2d 146, 148 (Mo.App. 1988). "In addition, there is nothing here to indicate that Judge [Pritchett's] actions on the bench indicated an extrajudicial bias." **Id**. To the contrary, the record reflects Judge Pritchett's patient, unfailing courtesy in dealing with Green; his sincere interest in safeguarding Green's right to a fair trial; and his commendable efforts to dissuade Green from doing harm to his own defense. Point III fails.

### Point IV
### Self-Representation

We also reject an unpreserved complaint that Green was denied the right to represent himself at trial.[3] From the pretrial period through sentencing, Green vociferously complained to the trial court (and apparently to the governor, our supreme court, the ACLU, and others as well) about one – but not the other – of his two public defenders. To quote from one such letter:

> Judge Michael Martin Pritchett This will be My 3rd letter to you in regards To Dismissing My Attorney Ted Liszewski and two times I've told you in open court That i wanted To Dismiss Ted Liszewski …. I

---

[3] Although denial of an accused's right to self-representation is considered "structural" error that cannot be treated as harmless, **State v. Sanders**, 482 S.W.3d 492, 496 (Mo.App. 2016), it remains unresolved whether *unpreserved* structural error demands reversal. **Id**. at 496 n.1 (citing **Puckett v. U.S.**, 556 U.S. 129, 140 (2009)). *See also* **State v. Kunonga**, 490 S.W.3d 746, 769 n.20 (Mo.App. 2016) (Supreme Court has not yet resolved whether every "structural" constitutional violation satisfies that the federal plain-error prong most similar to Missouri's requirement of a demonstrated manifest injustice or miscarriage of justice; also citing **Puckett**).

do not trust Ted Liszewski in any way Are Form To be My Attorney…. **My Sixth Amendment Guarantees me in criminal cases The right To adequate representation**…. **I need a competent legal counsel To ensure The preservation of my right. I need a new Attorney.** I have all copies and letter's going and coming back about me asking The court's To help me about This Attorney and my right's. A.C.l.u. Know's supreme court, chief Disciplinary counsel know's, My Family now Judge Michael Martin Pritchett I'm asking you For The Fifth Time Two in our court and This The Third letter **i want to fire Ted liszewski and seek new counsel**[4]

Despite this stated desire for constitutionally-guaranteed legal representation, Green later convinced the trial judge to let him dismiss his attorneys. After several weeks without lawyers, Green sought reappointment of counsel, which the court granted, reappointing the public defenders.

Sixteen days before jury trial was to begin, Green interrupted a suppression hearing with "I am waiving counsel today," prompting a colloquy in which the judge intimated that Green was trying to delay the trial again; forcefully opined that Green could not effectively defend himself against the pending charges; reminded Green that "[w]e have been through this before"; and twice recounted Green's prior waffling about dismissing counsel, then wanting counsel reappointed; all of which prompted Green to counter "[a]nd I did tell you that I did not want [Mr. Liszewski] as my attorney back again if you re-appoint him." Green never again mentioned waiving counsel, but persisted (pretrial through sentencing) in complaints about Mr.

---

[4] Our emphasis. Otherwise we have quoted from the letter verbatim, errors included, as we can read the handwriting. Other correspondence and motions written by Green and cited by him in this letter or in trial-court proceedings have not been provided to us, so we may assume their content would be unfavorable to Green's claims on appeal. *Salinas v. State*, 96 S.W.3d 864, 866 (Mo.App. 2002).

Liszewski *only*, plainly indicating that he had no issue with his other lawyer who would, and did, also represent Green at trial.

Unless we ignore the context and tenor of the whole record, including Green's written insistence on having "adequate representation" and "competent legal counsel," his request to reappoint counsel after having dismissed them, and his consistency in criticizing only one of his two lawyers, we cannot find that he unequivocally invoked his right to self-representation, ***State v. Hampton***, 959 S.W.2d 444, 448 (Mo. banc 1997), as opposed to wanting to fire one, but only one, of his attorneys. We certainly cannot find the court evidently and obviously erred in not again dismissing *both* lawyers, leaving Green with *no* legal representation, when he was criticizing only *half* of his legal team.[5] Finding no error, plain or otherwise, we deny Point IV and affirm the judgment of conviction.

DANIEL E. SCOTT, J. – OPINION AUTHOR

NANCY STEFFEN RAHMEYER, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS

---

[5] In fairness, having cited Green's many complaints and allegations about Mr. Liszewski, we would be remiss not to also note the judge's parting words to Green, at sentencing, about "how hard Mr. Liszewski tried that case for you. He did everything in the world that he could possibly do on a case that had very little possibility of any success."

8