**STATE of Missouri, Respondent,**

v.

**Bruce GERMANY, Appellant.**

**No. ED 93245.**

Missouri Court of Appeals,
Eastern District,
Division Five.

Oct. 26, 2010.

474

Nancy A. McKerrow, Columbia, MO, for appellant.

Chris Koster, Terrence M. Messonnier, Jefferson City, MO, for respondent.

GARY M. GAERTNER, JR., Presiding Judge.

## Introduction

Bruce Germany (Germany) appeals from a judgment of conviction for fifteen counts of sexual contact with a student by a teacher, a class D felony, in violation of Section 566.086 RSMo.[1] He asserts that the trial court erred in issuing instructions with disjunctive verdict directors, and in overruling his motion for judgment of acquittal, because the State failed to prove an essential element of sexual contact under Section 566.086. We affirm in part and reverse in part.

## Factual and Procedural Background

On May 13, 2009, Germany was indicted by information for nineteen counts of sexual contact with a student by a teacher while on public school property. Specifi-

cally, Counts I–IX alleged sexual contact with B.L. between September 1, 2006 and April 30, 2007; Count X alleged sexual contact with B.L. on May 1, 2007; Counts XI–XIII alleged sexual contact with R.K. between December 1, 2006 and April 30, 2007; and Counts XIV–XIX alleged sexual contact with A.K. between June 5, 2006 and April 30, 2007. Viewed in a light most favorable to the verdict, the following evidence was adduced at Germany's trial.

For the State, B.L. testified to the following. She was a resident student at Lakeside Center, a juvenile detention facility (Lakeside), from July 2006 to May 2007. She had been ordered by the juvenile court to attend Lakeside due to truancy. During that time Germany was a teacher's assistant and substitute teacher at Lakeside. B.L. was approximately 16 years old, and Germany was approximately 53 years old. Germany had a reputation as the "coolest" teacher because he was lenient with discipline and would give the students candy.

B.L. had romantic feelings toward Germany, and frequently stayed late in classes where he was the teacher's assistant or substitute teacher to try to be alone with him. In October of 2006, Germany began touching B.L. He touched her "pretty much everywhere[:][o]n [her] clothing, like [her] breasts, [her] vagina, [her] butt, everywhere. But never underneath the clothes." For the most part, the sexual contact would occur in the art classroom, which had long L-shaped tables, rather than individual desks. In the art room, Germany would sit next to B.L. and "would" rub her vagina over her clothes under the table with his hand. In addition to the art room, if no one was in a classroom with them, Germany "would touch" her breasts, and there were a "few times"

[1] All statutory references are to RSMo (Supp. 2006), unless otherwise indicated.

when he would grab her butt as she was walking out of a classroom. Between October 2006 and April 30, 2007, the referenced "touching" took place "at least once a week." Germany told her that he was going to leave his girlfriend to be with her, and they agreed that once B.L. was released from Lakeside, they would have sex and be a couple. B.L. wrote "I [heart] you" on a school folder, and when she showed it to Germany, he colored in the heart and added the word "too."

When confronted by her therapist, B.L. denied that Germany would touch her, because she thought she was in love with him and did not want to get him—or herself—into trouble. Eventually, however, she told her personal counselor, who reported Germany to the principal and the police. B.L. and another victim, R.K., were friends and were roommates at one point. They discussed how Germany was touching both of them and that they both had feelings for Germany. B.L. was hurt but not angry to discover that Germany was also touching other girls, and she and R.K. did not conspire to get Germany into trouble.

R.K. testified that she was a resident at Lakeside from March 2006 to July 2007, when she was ages 15 and 16. She had been ordered to Lakeside for truancy. She liked Germany and thought that he was "cool." They would flirt with each other, and, beginning in December 2006 until May 2007, he grabbed her butt approximately ten times, touched her breast with his hand once, and "kind of stuck [his] hand between [her] legs once." Specifically, when Germany was sitting next to R.K. in the art room, he put his hand under the table and between her legs and rubbed her inner thigh and vagina outside of her clothing. She would flirt with him and grab his butt as well. Germany would tell her that she looked hot and that he wanted to "f——" her.

A.K. testified that she was a resident at Lakeside from August 2005 to May 2007 when she was ages 17 and 18. She had been ordered there for violation of probation for curfew violations. She liked Germany and thought he was "super nice" because he was lenient with the rules. When she first arrived at Lakeside in 2005, Germany commented several times that he could imagine what it would be like to "f——" her, and that he imagined her being a "freak" and "wild" in bed. Starting in June 2006, Germany would rub her butt and breasts as he passed her in the classrooms and hallways, even though there was plenty of room to pass without touching. Once, while they were watching a movie in the science classroom, Germany sat at a desk close to hers and touched her breasts. Another time in the science classroom, when she put her head down on her desk in class, to wake her up, he rubbed his hand between her inner thighs and touched her vagina over her clothes. Germany touched her "breast, [her] butt or [her] vagina" "more often than once a week" between June 2006 and April 30, 2007.

Lana Newport testified that she has been an art teacher at Lakeside for seven years, and that she worked with Germany. In the 2006–2007 school year, she walked into the art room and noticed Germany sitting very close to B.L. with his hands under the table. She thought it was weird and inappropriate. When she asked him what he was doing, he responded that he was counseling the students. She told him not to sit that close to a student again. A week or two later, she again walked into the art room and saw him sitting even closer to B.L., with the whole sides of their bodies touching. She had not previously seen him sitting that close to a student.

That same school year, she observed him look A.K. up and down and tell her "you're looking good today" in a way that sounded inappropriate. On cross-examination, she testified that she never saw Germany do anything inappropriate with his hands, but also that she could not see his hands under the table when she saw him sitting with B.L.

For the defense, Daniel Bransford, John Higgins, Joy Weber, and William Everett—all teachers or teacher's assistants at Lakeside with Germany—testified that they never witnessed Germany engage in inappropriate or sexual behavior with the students, never reprimanded Germany for inappropriate contact with students, and never received complaints from students about Germany's behavior. They also testified that B.L. and R.K. were well-behaved kids who did not generally get into trouble; A.K. had a "bit of a temper" but was mostly well-behaved.

At the close of evidence, the State moved to amend the information regarding Count X to reflect the evidence, changing "May 1, 2007" to "between September 1, 2006 and April 30, 2007." The court granted the amendment over Germany's objection. Germany's motion for judgment of acquittal at the close of all the evidence was overruled.

Instructions Nos. 6 through 15, instructed the jury that as to Counts I–X,

[I]f you find and believe from the evidence beyond a reasonable doubt:

First, that between September 1, 2006 and April 30, 2007, but separate and distinct from [the other Counts], in the County of St. Louis, State of Missouri, the defendant touched the genitals or anus or breast of [B.L.], through the clothing, and

Second, that he did so for the purpose of arousing his own sexual desire, and

Third, that defendant at the time was an employee with the Special School District of St. Louis County [,] a public school, and

Fourth, that [B.L.] at the time was a student of [that] school, and

Fifth, that this conduct occurred inside the school, which is located on public school property, then you will find the defendant guilty under Count [s I–X] of sexual contact with a student.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all these propositions, you must find the defendant not guilty of that offense.

Instructions Nos. 16 through 18 issued identical instructions to the jury as to Counts XI–XIII, pertaining to R.K. between December 1, 2006 and April 30, 2007. Instructions Nos. 19 through 24 issued identical instructions to the jury as to Counts XIV–XIX, pertaining to A.K. between June 5, 2006 and April 30, 2007. Instruction No. 26 stated that defendant was charged with separate offenses in each of the nineteen counts submitted, that each count must be considered separately, and that the jury should return separate verdicts for each count. Counsel for Germany objected to the "giving of the instructions" as "unsupported by the evidence entirely and in total."

The jury returned guilty verdicts for Counts I–XV and not guilty verdicts for Counts XVI–XIX, all involving A.K. The jury recommended a sentence of four years on Counts I–X, a sentence of two years on Counts XI–XIII, and a sentence of two years on Counts XIV and XV. Germany moved for a new trial, asserting, inter alia, that the court erred in failing to direct verdicts of acquittal due to the inconsistent verdicts and punishments rendered by the jury. The trial court denied the motion. The trial court then sen-

tenced Germany to four years concurrent on Counts I–VIII, four years consecutive on Count IX, three years consecutive on Count X, two years consecutive on Count XI, and two years concurrent on Counts XII–XV, for a total of thirteen years of imprisonment in the Missouri Department of Corrections. Germany timely appealed.

## Discussion

### Point I

■ In his first point on appeal, Germany asserts that the trial court plainly erred in submitting jury instructions with disjunctive verdict directors, because the evidence did not support all three alternative theories of guilt, thus denying his right to due process, to a unanimous jury verdict, and to be free from double jeopardy. We disagree.

■ In general, this court reviews de novo the issue of whether a jury received proper instructions. *Harvey v. Washington*, 95 S.W.3d 93, 97 (Mo. banc 2003). In order to preserve for review claims of instructional error, counsel must make a specific claim of error and again raise the error in a motion for new trial. *State v. Richards*, 300 S.W.3d 279, 281 (Mo.App. W.D.2009). As Germany concedes, his general objection to the instructions was insufficient to preserve for appeal his objection to the disjunctive verdict director. His motion for new trial citing "inconsistent" jury verdicts and punishments was likewise insufficient. *Berra v. Danter*, 299 S.W.3d 690, 703 (Mo.App. E.D.2009) ("[a] point on appeal may not enlarge or change the objection made at trial") (internal quotation omitted).

■ Because this point was unpreserved at trial, we review it for plain error.[2] Plain error review under Rule 30.20 is discretionary and granted where a claim of plain error establishes on its face substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. *State v. Wurtzberger*, 40 S.W.3d 893, 897–98 (Mo. banc 2001). Instructional error is seldom plain error. *State v. Wright*, 30 S.W.3d 906, 912 (Mo.App. E.D. 2000). For instructional error to rise to the level of plain error, the defendant must establish not mere prejudice, but that the trial court's instructional error so misdirected or so failed to instruct the jury, that it actually affected the jury's verdict and caused manifest injustice or a miscarriage of justice. *State v. Haynes*, 158 S.W.3d 918, 919 (Mo.App. W.D.2005).

Germany does not allege error in the trial court's submission of the instruction prongs addressing touching the victims' breasts and vaginas. Reviewing the record in a light most favorable to the jury's verdict, the evidence was overwhelming that Germany touched the breasts and vaginas of B.L., R.K., and A.K. *State v. Nylon*, 311 S.W.3d 869, 879 (Mo.App. E.D. 2010) (view evidence in light most favorable to verdict). Because his guilt was clear, we conclude that the effect of the disjunctive verdict director on the jury's verdict, if any, did not result in manifest injustice. *Haynes*, 158 S.W.3d at 919–20 (when evidence for one prong of alternative instruction was overwhelming, no manifest injustice resulted from use of disjunctive verdict director injury instructions even where evidence did not support other prong).

**2.** We note that the State's submission of the disjunctive verdict directors was ill-advised. Under a different standard of review, we will find reversible error in the State's submission of a disjunctive verdict director if the evidence does not support each alternate basis of guilt. *See e.g. State v. Davison*, 46 S.W.3d 68, 75 (Mo.App. W.D.2001).

■ Likewise, Germany's assertions that the disjunctive verdict director deprived him of a unanimous verdict and subjected him to double jeopardy are unavailing. First, a "jury need only be unanimous as to the ultimate issue of guilt or innocence, and need not be unanimous as to the means by which the crime was committed." *State v. Fitzpatrick*, 193 S.W.3d 280, 292 (Mo.App. W.D.2006). Here, there was no question as to Germany's guilt of the charges: the evidence was overwhelming that Germany, an employee of the school, had sexual contact with one or more students while on public school property. Section 566.086.

Second, because each incident of sexual contact was separate and distinct from the others, Germany was not subjected to double jeopardy. Protections against double jeopardy provide that no person shall be subject to multiple punishments for the same offense. *State v. Flenoy*, 968 S.W.2d 141, 143 (Mo. banc 1998). Here, Germany violated Section 566.086 multiple times with multiple victims; thus, he may be properly convicted of each separate crime. *State v. Wadsworth*, 203 S.W.3d 825, 833 (Mo.App. S.D.2006) (double jeopardy does not arise when defendant is punished for more than one offense arising from same set of facts, even if offenses are multiple violations of same statute). To the extent Germany asserts that he may be subject to additional prosecution in the future based on the same facts, we decline to so speculate.

Point denied.

### Point II

■ In his second point on appeal, Germany argues the trial court erred in overruling his motion for acquittal at the end of all the evidence, because there was insufficient evidence to support the convictions in that touching a student's butt is not prohibited by Section 566.086. We review challenges to sufficiency of the evidence supporting a criminal conviction for whether sufficient evidence was presented at trial from which a reasonable juror might have found the defendant guilty of all the essential elements of the crime. *State v. Gibbs*, 306 S.W.3d 178, 181 (Mo. App. E.D.2010). We accept as true all evidence supporting the jury's verdict, including all favorable inferences therefrom, and disregard all contrary evidence and negative inferences. *Id.*

Section 566.086 prohibits a teacher or employee of a public school district from having sexual contact with a student on public school grounds. Sexual contact is defined as "any touching of the genitals *or* anus of another person, *or* the breasts of a female person, or such touching through the clothing, for the purpose of arousing or gratifying sexual desire of any person." Section 566.010(3) (emphasis added). For conviction under these statutes, it is not required that the State prove the defendant touched the anus of the victim; rather, evidence that the defendant touched the victim's genitals or the female victim's breasts, directly or through the clothing is sufficient for conviction.

We agree with Germany that the terms "butt" and "anus" are not synonymous, and thus that evidence of touching a student's butt is insufficient to demonstrate contact with the anus. *State v. Tolen*, 295 S.W.3d 883, 887 (Mo.App. E.D.2009) (discussing definitional differences between butt and anus). The evidence presented at trial was insufficient to show that Germany touched the anuses of any of his victims. Regardless, the record is rife with other evidence of sexual contact between Germany and B.L., R.K., and A.K.

■ B.L. testified to multiple incidents of sexual contact, touching genitals or

breast, with Germany. She did not testify to specific dates or specific number of occasions of the abuse, but stated that he "would" touch her breasts and vagina in the art classroom and that he "would touch" her breasts in another classroom. She testified that he touched her approximately once a week between October of 2006 and April 30, 2007, and further testified that there were a "few times" when he grabbed her butt. Although she did not specify whether the weekly touchings were of her breasts, butt, or vagina, her statement that he grabbed her butt a "few" times, indicates that the majority of the contact was with her breasts and vagina. Germany indicated to B.L. that he loved her and would leave his girlfriend for her, and they planned to have sex and be a couple after she was released from Lakeside. Under our standard of review, we cannot say that there was insufficient evidence for a reasonable jury to have found Germany guilty of ten counts of sexual contact by a teacher or school employee with a student on school grounds, by touching her genitals and breasts for the purpose of arousing or gratifying sexual desire under Sections 566.086 and 566.010(3). *Gibbs*, 306 S.W.3d at 181.

■ Regarding R.K., viewing the evidence in a light most favorable to the verdict, the record showed that Germany touched her breasts once and her vagina once while on school grounds. During the same time, Germany commented to R.K. that she looked hot and that he wanted to have sex with her. Thus, there was sufficient evidence to support convictions for two counts of sexual contact under Sections 566.086 and 566.010(3), but not a third. The State concedes this point. We reverse Count XI and remand to allow the trial court to reconsider its sentence.

■ Of the five charges of sexual contact with A.K., Germany was convicted of two. The record showed that in the school's science classroom Germany once touched A.K.'s breasts, and he once rubbed his hand between her inner thighs and touched her vagina over her clothes. In addition, Germany commented several times that he wanted to have sex with her and speculated on her sexual abilities. Viewing the record in a light most favorable to the verdict, there was sufficient evidence to support convictions for Counts XIV and XV for sexual contact under Sections 566.086 and 566.010(3).

Point granted in part and denied in part.

### Conclusion

The judgment of the trial court is affirmed in part and reversed in part. We reverse Count XI and remand to the trial court for resentencing in accordance with this opinion.

MARY K. HOFF and PATRICIA L. COHEN, JJ., concur.