

# In the Missouri Court of Appeals Eastern District

## DIVISION TWO

| | | |
|---|---|---|
| STATE OF MISSOURI, | ) | ED102736 |
| | ) | |
| Appellant, | ) | Appeal from the Circuit Court |
| | ) | of the City of St. Louis |
| v. | ) | 1322-CR04521 |
| | ) | |
| JERALD L. HARRIS, | ) | Honorable Robert H. Dierker, Jr. |
| | ) | |
| Respondent. | ) | Filed: March 15, 2016 |

## Introduction

Jerald L. Harris (Defendant) appeals the judgment entered upon his convictions of three counts of first-degree robbery, one count of attempted first-degree robbery, attempted forcible sodomy, kidnapping, resisting arrest, and six associated counts of armed criminal action. Defendant argues the trial court erred in admitting out-of-court identification evidence and related testimony because the identification procedures used by the police were unduly suggestive and rendered the identifications unreliable. We affirm.

## Background

The evidence at trial, in the light most favorable to the judgment, was the following. On January 6, 2013, Stephanie Durkacz (Durkacz) was visiting her friend

Julie Spychala (Spychala) at Spychala's apartment in the Shaw neighborhood in the City of St. Louis. A friend of theirs, Brendon Hutton (Hutton) came over to pick Durkacz up, and Durkacz and Spychala went downstairs to meet him outside. The three of them stood in the street and talked for a few minutes.

As they were talking, Spychala noticed a man, later identified as Defendant, coming toward them. She made eye contact with him and then looked back at her friends and continued talking with them. Then Defendant came up behind them with a handkerchief over his face, holding a gun. Defendant said, "Give me your money or I'll shoot you." Spychala did not have any money, so she threw her gloves on the ground in front of Defendant. Durkacz and Hutton handed Defendant money. Defendant continued to point the gun at them. Then Defendant demanded their phones, and Spychala and Durkacz both put their phones on the ground. Defendant kept demanding more money, and eventually Durkacz and Hutton had given him everything out of their wallets. At one point, the bandana covering Defendant's face fell down, and Hutton was able to see Defendant's face for a few seconds.

Defendant then looked at Durkacz and said, "Well, bitch, you're going to suck my d[---]." Defendant went up behind her and grabbed her butt and she froze. Spychala kept saying, "No" and "Please, sir, please." She tried to offer Defendant her jacket, which she told him was worth $150. He started to pull off her jacket but Spychala got nervous and held her ground. Eventually Defendant stopped and said "Run to your car and don't turn around." Defendant ran away down an alley.

The three victims got in Hutton's car and started driving. Hutton still had his phone, so he called 911. Police took them back to the scene. Their credit cards and

2

Spychala's gloves were still on the ground, but the money and phones were gone. A K-9 police unit tracked Defendant's scent but lost it beyond the alley.

Six months later, Defendant was arrested while attempting to commit another robbery and sexual assault. Detective Kevin Griffin (Detective Griffin) believed Defendant might have been the man who had robbed Spychala, Durkacz, and Hutton, because Defendant lived in close proximity to the robbery and when he was arrested, he had two bandanas with him and had discarded a gun that matched the description given by the three victims. Detective Griffin had Defendant placed in a lineup. Because Detective Griffin was not able to reach any of the victims to come view the live lineup, he took photographs of the lineup. Detective Griffin also conducted an audio lineup, during which he recorded each of the four men in the lineup reading phrases that the robber had said during the incidents Detective Griffin was investigating.

Detective Griffin contacted Spychala, Durkacz, and Hutton. He met with Spychala and Hutton separately, and he showed them the photographs and played the audio recordings for them. Both Spychala and Hutton identified Defendant as the man who robbed them. Because Durkacz lived in Texas, Detective Griffin emailed her the pictures and audio files. Durkacz also identified Defendant.

For the incident on January 6, 2013, involving Spychala, Durkacz, and Hutton, the State charged Defendant as a prior offender with four counts of first-degree robbery, one count of attempted first-degree robbery, one count of attempted forcible sodomy, one count of sexual abuse, three counts of kidnapping, one count of resisting arrest, and 11 counts of armed criminal action, accompanying all counts except resisting arrest. Before trial, Defendant moved to suppress the identifications made by each victim,

3

arguing the identification procedures were unduly suggestive and rendered the identifications unreliable. The trial court conducted a hearing, after which it denied Defendant's motion to suppress.

The jury convicted Defendant of three counts of first-degree robbery (Counts I, V, and VII), one count of attempted first-degree robbery (Count XIX), one count of attempted forcible sodomy (Count III), one count of kidnapping (Count XXI), six associated counts of armed criminal action (Counts II, IV, VI, VIII, XX, and XXII), and resisting arrest (Count XXIII). The trial court sentenced Defendant to life in prison on every count except Count XXIII, for which the court sentenced Defendant to seven years' imprisonment. Some of the sentences were to run concurrently and some consecutively, amounting to six consecutive life sentences. This appeal follows.

## Discussion

Defendant raises four points on appeal. In each of Points I, II, and III, Defendant argues that the trial court erred in denying his motion to suppress the victims' identifications because the photographic lineup procedures used with each victim were unduly suggestive and rendered the identifications unreliable. Because Detective Griffin used the same lineup procedures to obtain each victim's identification, we combine our discussion of Defendant's first three points on appeal. In Point IV, Defendant similarly argues that the trial court erred in denying his motion to suppress because the audio lineup procedure was unduly suggestive and rendered the identifications unreliable.

## Standard of Review

We will reverse a trial court's ruling on a motion to suppress only if it is clearly erroneous. State v. Sund, 215 S.W.3d 719, 723 (Mo. banc 2007). We defer to the trial

4

court's factual findings and credibility determinations, and we consider all evidence and reasonable inferences in the light most favorable to the trial court's ruling. Id. We consider evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling. State v. Pike, 162 S.W.3d 464, 472 (Mo. banc 2005).

## Photographic Lineup

In Points I, II, and III, Defendant argues the trial court should have suppressed the identifications by Spychala, Durkacz, and Hutton, respectively, based on the photographic lineup Detective Griffin prepared, because the lineup was unduly suggestive and rendered the identifications unreliable. We disagree.

In determining whether to admit identification evidence, courts employ a two-prong test. Foster v. State, 348 S.W.3d 158, 161. First, the court considers whether the identification procedure was unduly suggestive in that the identification was the result of the procedure rather than the witness' recollection. Id. at 161-62. If the procedure was not unduly suggestive, the identification is admissible. Id. at 162.

If the court finds the procedure was unduly suggestive, then it considers the second prong: "whether the suggestive procedures have so tainted the identification as to lead to a substantial likelihood that the pre-trial identification was not reliable." Id. (quoting State v. Chambers, 234 S.W.3d 501, 513 (Mo. App. E.D. 2007)). "Reliability, not suggestiveness, determines the admissibility of identification testimony." State v. Bush, 372 S.W.3d 65, 68 (Mo. App. W.D. 2012) (quoting State v. Nelson, 334 S.W.3d 189, 193 (Mo. App. W.D. 2011)).

5

Here, Defendant argues the photographic lineup procedure was unduly suggestive for two reasons: (1) the victims' description of the robber was that he wore dark clothing, and Defendant was the only person in the lineup wearing dark clothing; and (2) the victims' description of the robber was that he was tall, and Defendant was taller than two of the other men standing immediately next to him in the lineup.

Detective Griffin gave the following testimony at the suppression hearing. He stated that in putting lineups together, they attempt to find as many people being held at the justice center who are available and who look similar to the suspect. They look for someone with similar age, hairstyle, complexion, and size.

In this particular case, Detective Griffin found three men he believed to be similar to Defendant. He gave Defendant the choice of position in which to stand, and Defendant chose position number one. All four men came in with the clothes they had been wearing when they were arrested. Defendant was wearing a black t-shirt with a picture of a skull on it. Detective Griffin testified that they do not ask anyone to change clothes and there are no clothes available at the justice center for that purpose. Detective Griffin took six photographs: two of the group of men to show relative size, and then a close-up photograph of each man individually.

The first victim from this case Detective Griffin contacted was Spychala. He showed her a form containing the following statement:

> The individuals you are viewing may or may not be the actual suspect in the case. Please look carefully at all of the physical attributes of each person. After all have been viewed, tell the law enforcement officer who is with you whether or not you recognize any of the individuals in the lineup, and if so, where you have seen this person before.

He then showed Spychala the photographs, and she immediately identified Defendant. Detective Griffin next met with Hutton, and he followed the same procedure in showing Hutton the form, and then the photographs. Hutton also identified Defendant as the person from the robbery. After each victim made an identification, Detective Griffin instructed them not to discuss the lineup with each other.

Finally, Detective Griffin called Durkacz, who lived in Texas, and asked her whether she had talked to either of the other victims about the lineups. She said she had not, and Detective Griffin emailed the photographs and audio files to her. The email contained the following instructions:

> Photos 1 and 2 depict a physical lineup containing four suspects. The suspect from your incident may or may not be present in the lineup. Please do not feel compelled to make an identification. However, if you recognize the subject responsible for robbing you, please indicate such. Photos 3 through 6 are close-up photos of each individual subject.

Durkacz sent a reply by email, indicating that she was identifying Defendant as the person responsible.

The trial court concluded that the lineup procedure here was not unduly suggestive under the circumstances. We find sufficient evidence in the record to support the trial court's denial of Defendant's motion to suppress on this basis.

Our ultimate question regarding whether the procedures used were unduly suggestive is whether the identifications came from the victim's own recollection or from some procedure or action employed by the police. State v. Barriner, 210 S.W.3d 285, 297 (Mo. App. W.D. 2006). "Dissimilarity in physical appearance, alone, is insufficient to establish impermissible suggestion. . . . *as long as no one individual clearly stands out in the lineup*, the law does not require exact conformity [of physical characteristics]."

7

State v. Conrick, 375 S.W.3d 894, 900 (Mo. App. W.D. 2012) (quoting State v. Floyd, 437 S.W.3d 115, 125-26 (Mo. App. E.D. 2011)).

Here, Defendant first argues that because he was the only person wearing dark clothing, and the victims had described the robber as wearing dark clothing, the lineup procedure was unduly suggestive. However, Detective Griffin testified that the victims described Defendant as wearing a coat and hoodie during the robbery. During the lineup, Defendant was wearing a dark t-shirt with a picture of a skull on it. None of the men in the lineup were wearing a coat, and two of the other men were wearing a hoodie. Additionally, the police did not take any action regarding the men's clothing; they simply wore in the lineup what they were wearing already.

Moreover, none of the victims stated that they based their identification on the clothing Defendant was wearing at the lineup, and two of them affirmatively denied doing so. Spychala testified that when she viewed the lineup, she viewed the close-up photographs first. She used a piece of paper to partially cover each man's face because the robber had worn a bandana, and she identified Defendant from his individual photograph based on his eyes. Hutton, when asked whether Defendant's dark clothing in the lineup influenced his identification, responded "No. No, the hoodie was—it was based off of that night." Hutton explained that he had the hoodie Defendant was wearing during the robbery in his mind when he viewed the photographs, and considered Defendant's build in identifying him.[1] Given the totality of the circumstances here, Detective Griffin's decision to allow the lineup participants to remain in the clothes they were wearing when they were arrested did not render the procedure unduly suggestive.

_____

[1] From this it is reasonable to infer that Hutton was not influenced by the clothing of the lineup participants, as two of them were wearing hoodies while Defendant was not, and Hutton did not choose either of them.

8

See State v. Grady, 649 S.W.2d 240, 244 (Mo. App. E.D. 1983) (where identification did not turn on clothing worn by defendant, lineup in which defendant appeared wearing same clothes victim described was not unduly suggestive); State v. Arnold, 528 S.W.2d 164, 166 (Mo. App. 1975) (fact that defendant was wearing brown trousers and jacket, matching victim's description of perpetrator's clothes, did not render indentification procedure unduly suggestive).

Next, Defendant argues that the height difference in the lineup participants rendered the procedure unduly suggestive. Defendant was in position number one in the lineup. The participant in position number four was about the same height as Defendant, but the participants in positions two and three were a couple of inches shorter than Defendant. Defendant argues that because the victims described him as tall, the fact that the two participants standing closest to him in the lineup were significantly shorter than him unduly influenced the victims' identifications.

However, the four men were within a couple of inches in relative height. One of the other men was the same height as Defendant, thus the victims could not have chosen Defendant based solely on height. Under the circumstances, the difference in height between Defendant and two of the three other participants did not rise to the level of undue suggestion here. See State v. Willis, 577 S.W.2d 655, 657 (Mo. App. S.D. 1979) (fact that two of the four lineup participants were taller than defendant did not render identification procedure unduly suggestive) (citing United States v. Lewis, 547 F.2d 1030, 1035 (8th Cir. 1976) ("[w]hile appellant was the shortest of six men, he was not significantly so; none of the men was unusually tall and all were within a range of about four inches")).

9

Because substantial evidence supports the trial court's conclusion that the photographic lineup procedure was not unduly suggestive, we will not disturb the trial court's ruling. See Foster v. State, 348 S.W.3d at 162 (where lineup procedure is not unduly suggestive, identification is admissible). Points I, II, and III denied.

### Audio Lineup

In Point IV, Defendant argues that the trial court erred in denying his motion to suppress because the audio lineup procedure used by Detective Griffin was unduly suggestive, rendering the victims' identifications unreliable. We disagree.

In addition to showing the victims photographs of the live lineup, Detective Griffin presented the audio recordings of each suspect repeating phrases used in the robbery. The position of each participant's recording corresponded to his same position in the lineup. Detective Griffin testified that he did it that way because in a live lineup, each participant steps forward and repeats the phrases, and therefore the person viewing the lineup sees and hears each participant in the same order. Each of the three victims identified Defendant's voice from the audio lineup. Defendant argues that the fact that the participants were in the same position for both lineups rendered the audio lineup procedure unduly suggestive.

Identifications made solely on the basis of a suspect's voice are admissible. See State v. Bolanos, 743 S.W.2d 442, 445 (Mo. App. W.D. 1987) (identification admissible where victim viewed live lineup but identified defendant based on his voice). None of the victims stated that they identified Defendant's voice because it corresponded to the photograph of Defendant they had already identified. Compare State v. Hornbuckle, 769 S.W.2d 89, 94-95 (Mo. banc 1989) (noting victim's photographic identification should

10

have been excluded because victim stated he based it solely on voice identification, but concluding admission was not prejudicial). Moreover, Durkacz affirmatively testified otherwise. She stated that when she listened to the audio files, she did not look at the photographs at the same time. She said she recognized the robber's voice immediately when she heard the audio recording of Defendant's voice, and that it "brought [her] back to that night." Spychala similarly testified that when she listened to the audio recordings, she put her head down and closed her eyes rather than viewing the photographs at the same time. She recognized the voice because "forever after he robbed us . . . I just knew it."

Considering the totality of the circumstances here, we find substantial evidence supporting the trial court's ruling that the audio lineup procedure was not unduly suggestive. Detective Griffin's procedure closely resembled their customary live lineup procedure, in which witnesses would view and hear the lineup participants in the same order. Defendant cites no authority holding such a procedure is unduly suggestive, and we find no evidence in the record that the position of the participants in the lineup influenced any of the witness' identifications. Point denied.

### Conclusion

The trial court's conclusion that the identification procedures used by police were not unduly suggestive is supported by substantial evidence on the whole record. Therefore, the trial court did not clearly err in denying Defendant's motion to suppress. The judgment is affirmed.

Gary M. Gaertner, Jr., Judge

Philip M. Hess, P.J., concurs.
Angela T. Quigless, J., concurs.

11