**STATE of Missouri, Respondent,**

v.

**Quincy A. HARRIS, Appellant.**

**ED 105024**

Missouri Court of Appeals,
Eastern District,
DIVISION THREE.

Filed: December 12, 2017

Appeal from the Circuit Court of the City of St. Louis, 1522-CR02968-01, Honorable Rex M. Burlison, Judge

Danelle C. Duffy, 231 South Bemiston Avenue, Suite 800, St. Louis, MO 63105, for appellant.

Joshua D. Hawley, Daniel N. McPherson, PO Box 899, Jefferson City, MO 65102, for respondent.

Gary M Gaertner, Jr., Presiding Judge

## Introduction

Quincy A. Harris (Defendant) appeals the judgment entered upon his conviction by jury of one count of robbery in the first degree and one count of armed criminal action. He contests the trial court's admission of a pre-trial identification from a photographic lineup, the trial court's failure to grant a mistrial based on an officer's statement implying Defendant had been arrested before, the trial court's allowance of a late-endorsed State's witness' testimony, and the sufficiency of the evidence to support Defendant's convictions. We affirm.

## Background

The evidence at trial, in the light most favorable to the verdict,[1] was the following. On July 15, 2015, Stasia Gavin (Victim) was working at the Washateria laundromat as a laundry attendant, Around 8:30 p.m., Victim was sweeping the laundromat and preparing to close the doors for the night, Defendant came in the door and walked up alongside the dryers, Victim recognized

1. State v. Germany, 323 S.W.3d 472, 477 (Mo. App. E.D. 2010) (we view evidence in light most favorable to verdict).

him because Defendant's wife was a former employee of the laundromat and she had introduced Defendant to Victim. Victim testified Defendant was often in the laundromat, at least five days per week, using the wireless internet, using the phone, or walking around. When Defendant walked in, he had a t-shirt wrapped around his mouth, but Victim recognized him by his eyes, earn, and complexion. Victim also recognized the clothes Defendant was wearing because they were the same clothes he was wearing when she saw him earlier that day.

Defendant approached Victim with a gun. Victim put her hands up, but Defendant told her to put her hands down, go into the office, and get money out of the register. Victim complied, but she was shaken up and had trouble with the password. Defendant told her to "hurry up before he blast[s her] ass." Victim gave Defendant the money from the register, and Defendant told her to open the safe. Victim said she did not know the combination. Defendant ran out the laundromat door, and Victim called the police. Victim never acknowledged to Defendant that she recognized him because she did not want him to hurt her.

Victim gave the police Defendant's first name. Victim told the police that Defendant lived about one block away from the laundromat. A police canine officer came and attempted to track Defendant's scent. The dog tracked a scent to an area near where Victim said Defendant lived, but not to any particular house.

The manager of the laundromat gave police Defendant's last name, and Detective Scott Wilmont (Detective Wilmont) created a photographic lineup using a photo he obtained by entering Defendant's first and last name into a database. Detective Wilmont showed that lineup to Victim, and she did not identify anyone. Detective Wilmont later received a phone call from the manager of the laundromat providing additional pedigree information for Defendant from an employment application that he submitted to the laundromat. Detective Wilmont then entered Defendant's name as well as his date of birth and social security number into the database. Detective Wilmont created a photographic lineup using the results of his second database search, which included a picture of Defendant this time. He showed this lineup to Victim, and she identified Defendant as the person who robbed the laundromat.

The State charged Defendant with one count of robbery in the first degree and one count of armed criminal action. The jury found Defendant guilty of both charges. The trial court sentenced Defendant as a prior and persistent offender to terms of 12 years' imprisonment on each count, to be served consecutively with sentences Defendant had received for convictions on other charges. This appeal follows.

## Discussion

Defendant raises four points on appeal. First, he argues in Point I the trial court erred in allowing the State to present evidence of the photographic lineup because the police procedure was unduly suggestive and rendered the identification unreliable. In Point II, Defendant argues the trial court erred by denying Defendant's request for a mistrial when Detective Wilmont testified that the database he used to create the photographic lineups in this case was a database of people who had been previously arrested. In Point III, Defendant argues that the trial court abused its discretion in allowing the canine officer to testify because the State endorsed the witness the day before trial. Finally, Defendant contests the sufficiency of the evidence to support the jury's finding beyond a reasonable doubt that Defendant committed the robbery.

## Point I

Defendant argues that the trial court erred in admitting as evidence Victim's pre-trial identification of Defendant from the photographic lineup because the photographic lineup contained a picture of Defendant's entire face, but Victim saw only the robber's eyes, ears, and complexion. We disagree.

As a threshold matter, we consider whether Defendant preserved this point for appeal. "In order to attack the validity of the admission of evidence to which a motion to suppress evidence was directed, the question to which the motion was directed must be kept alive by asserting a timely objection to its admission at trial. . . ." State v. McDaniel, 236 S.W.3d 127, 130 (Mo. App. S.D. 2007). A timely objection is one that occurs "prior to the answer if it appears that the answer will be objectionable. If for some reason the objection is untimely, then the answer should be reached by a motion to strike." State v. Evenson, 35 S.W.3d 486, 491-92 (Mo. App. S.D. 2000). Additionally, Defendant may not broaden the theory advanced by the motion to suppress or objection; any new arguments on appeal not presented to the trial court are not preserved. State v. Ragland, 494 S.W.3d 613, 627 (Mo. App. E.D. 2016).

Here, prior to trial, Defendant filed a motion to suppress Victim's pre-trial identification of Defendant in the photographic lineup. Defendant argued that the procedures used by the police were unduly suggestive in that the other photographs in the lineup bore little resemblance to Defendant, and because police showed two photographic lineups to Victim on the same day, which pressured her to make an identification. Defendant further argued Victim's identification was unreliable because during the robbery, she looked down

almost immediately out of fear after seeing the robber's face, he had a mask over his face, and he was wearing a hat. At trial, Victim testified that she had identified Defendant in the second photographic lineup before Defendant's counsel objected to her testimony, and counsel did not ask the trial court to strike her answers.

We find Defendant failed to preserve this point for appeal. His argument on appeal—that the photographic lineup procedure was unduly suggestive because the lineup contained a photograph of Defendant's entire face—was not part of his argument to the trial court. See Ragland, 494 S.W.3d at 627. Additionally, Defendant did not timely object at trial. See State v. Decker, 591 S.W.2d 7, 11 (Mo. App. E.D. 1979) (objection was not preserved where defendant did not object until after witness answered question and did not move to strike answer). Accordingly, we may review Defendant's point on appeal only for plain error under Rule 30.20.[2] Ragland, 494 S.W.3d at 627. This two-pronged analysis first requires us to determine whether Defendant's claim "establishes facially substantial grounds for believing that the trial court's error was evident, obvious, and clear and that manifest injustice or miscarriage of justice has resulted." State v. Jones, 427 S.W.3d 191, 195 (Mo. banc 2014) (internal quotations omitted). Only if Defendant makes this facial showing will this Court proceed to determine whether manifest injustice or a miscarriage of justice actually occurred. State v. Baumruk, 280 S.W.3d 600, 607 (Mo. banc 2009).

The test for admissibility of a pre-trial identification is twofold: "First, the court considers whether the identification procedure was unduly suggestive in that the identification was the result of the procedure rather than the witness' recol-

---

2. All rule references are to Mo. R. Crim. P. (2017) unless otherwise indicated.

lection." State v. Harris, 483 S.W.3d 488, 491 (Mo. App. E.D. 2016). We will not find the procedure unduly suggestive where the identification is based on the witness' recollection. Foster v. State, 348 S.W.3d 158, 162 (Mo. App. E.D. 2011). Only if the court finds the procedure was unduly suggestive does it then consider whether there is a substantial likelihood that the identification was not reliable due to the suggestive procedure. Harris, 483 S.W.3d at 491.

██ Here, the trial court made no error, plain or otherwise, in allowing evidence of Victim's identification of Defendant in the photographic lineup because there is no indication that the procedures employed by police were unduly suggestive. Defendant first argues that the procedure was improper because the photographic lineup contained a picture of Defendant's entire face, when Victim said that the robber's face was covered except for his eyes and ears. While we find no case discussing this particular issue, we note that in State v. Harris, this Court upheld a photographic lineup procedure in which the victims identified the defendant from a photographic lineup picturing the defendant's full face, though he had worn a bandana over his face during commission of the crime. 483 S.W.3d at 492. One of the victims testified she had used a piece of paper to partially cover each man's face in the photos, but two other victims identified the defendant without saying they had attempted to partially cover the faces in the photographic lineup. Id. Here, Victim testified that she knew Defendant personally and recognized him when he came into the laundromat that night, based on his eyes, ears, complexion, and clothing. The fact that his face appeared fully in the photographic lineup did not influence her identification; rather, she already knew what his face looked like based on her personal knowledge of Defendant and her recognition of him the

night of the robbery. Defendant failed to establish the procedure was unduly suggestive due to containing a photograph of Defendant's entire face, and the trial court did not plainly err in denying his motion to suppress.

Additionally, Defendant argues that the photographic lineup procedure was unduly suggestive because none of the other photographs in the lineup resembled Defendant. The photographic lineup was not included in the record on appeal, and we have only defense counsel's description of the photographs from counsel's argument set forth in the transcript. Rule 81.12(a) states that "[t]he record on appeal shall contain all of the record, proceedings, and evidence necessary to the determination of all questions to be presented, either by appellant or respondent, to the appellate court for decision." Mo. R. Civ. P. (2017). Without the photographs in front of us, we cannot review them. Cf. State v. Hurst, 612 S.W.2d 846, 851 (Mo. App. E.D. 1981) (noting court had examined photographs from lineup). However, we note that "[n]oticeable differences in the appearance of participants in the lineup have repeatedly been held not to necessitate a finding of suggestiveness." Id. Because Defendant has failed to show the trial court plainly erred in failing to find the photographic lineup procedure was unduly suggestive, we do not consider Defendant's claim as it relates to the reliability of the identification. Harris, 483 S.W.3d at 491.

We find no evident, obvious, and clear error on the part of the trial court in admitting Victim's pre-trial identification of Defendant using the photographic lineup. Point denied.

## Point II

Defendant argues the trial court abused its discretion in denying his request for a mistrial after Detective Wilmont testified

that the database he used to create the photographic lineups in this case was a database of people who had been previously arrested. We disagree.

 "The decision to declare a mistrial is within the sound discretion of the trial court because it is in the best position to determine whether the alleged incident had a prejudicial effect on the jury." State v. Bazell, 497 S.W.3d 263, 267 (Mo. banc 2016). We will find a trial court abused its discretion "only when its ruling is clearly against the logic of the circumstances before it and so arbitrary and unreasonable as to shock the appellate court's sense of justice and indicate a lack of careful consideration." Id. (internal quotation and alteration omitted). Moreover, a "mistrial is a drastic remedy and should only be employed in the most extraordinary circumstances, when prejudice to the defendant cannot be removed in any other way." Id.

 Here, Defendant argues Detective Wilmont impermissibly implied that Defendant had been arrested before. "Evidence of the commission of separate and distinct crimes is inadmissible unless it has some legitimate tendency to establish the defendant's guilt of the charged crime." Id. (citing State v. McFadden, 369 S.W.3d 727, 741 (Mo. banc 2012)). Evidence that "shows that the defendant committed, was accused of, was convicted of, or was definitely associated with other crimes or misconduct" violates the rule, but "[v]ague or speculative references to the defendant's involvement in other crimes" does not. Bazell, 497 S.W.3d at 268 (citations omitted). Defendant has the burden to show Detective Wilmont's testimony constituted inadmissible evidence of other crimes. Id.

The following took place during Detective Wilmont's testimony:

[Witness]: So, after I got the name of the person that the victim said did this, we have a program called LEWEB, and attached to that program is another program called Crime Matrix. The Crime Matrix program has a list of everyone who's been arrested.

[Defense Counsel]: Objection, Judge, may I approach? . . . [T]he inference that's about to be made is that [Defendant] has been arrested before, which I don't think is proper evidence . . .

[Trial Court]: What relief do you want?

[Defense Counsel]: I think to probably preserve it I think I need to request a mistrial. . . .

[Trial Court]: . . . Mistrial is denied. Do you want to amplify this any further?

[Defense Counsel]: No, I don't want a curative instruction, I think that will just highlight it for the jury.

[Trial Court]: I'm not going to do anything further except instruct [the State] to tighten up your question to not where he got the photos, but during his investigation he was able to put together a photo lineup.

Detective Wilmont made no further reference to where he obtained the photographs for either of the two photographic lineups he created. Defendant did not testify, so the jury did not otherwise hear evidence of any of Defendant's prior convictions.

 We conclude the trial court did not abuse its discretion in denying Defendant's request for a mistrial under the circumstances here. "While testimony concerning the use of jail photos that discloses that a defendant has committed other crimes is improper, when, as here, the photograph is discussed in the context of identification and no testimony of prior crimes committed by Defendant was presented in connection with the photograph, the testimony is admissible." Bazell, 497 S.W.3d at 269 (finding no abuse of discretion in denial of mistrial where officer testified he pulled photos from Department of Revenue and from "jail system"): see also State v. Wright, 978 S.W.2d 495, 499 (Mo.

App. W.D. 1998) (holding court's admission of officer's testimony using term "mugshots" to describe photos compiled for lineup was not plain error). Detective Wilmont's statements implied at most that Defendant was arrested, but here, defense counsel lodged an objection before Detective Wilmont could testify that he actually obtained Defendant's photograph from the Crime Matrix system. Additionally, Detective Wilmont's statements above related to the first photographic lineup he created, which did not in fact contain Defendant's picture. Defense counsel specifically asked the trial court not to magnify it any further by giving a curative instruction. Under the circumstances, we cannot say the trial court abused its discretion or that the trial court's actions here prejudiced Defendant. Point denied.

## Point III

Defendant argues the trial court abused its discretion in admitting the testimony of Officer Jermaine Jackson (Officer Jackson) because the State did not endorse Officer Jackson as a witness until the day before trial and his testimony was more prejudicial than probative. We disagree.

■■■■ First, regarding Defendant's argument that the trial court improperly admitted Officer Jackson's testimony because the State did not endorse him as a witness until the day before trial, "[a] trial court has broad discretion to allow the late endorsement of a witness." State v. Spears, 452 S.W.3d 185, 192 (Mo. App. E.D. 2014). We will only reverse if we find an abuse of that discretion, which is a ruling that is "so illogical, arbitrary, and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." Id. Regarding a late-endorsed witness, we will find an abuse of discretion

only where the admission of testimony "results in fundamental unfairness to the defendant." Id. We consider the following four factors in making this determination: "whether (1) the defendant waived the objection; (2) the State intended to surprise the defendant, or acted deceptively or in bad faith with the intention of causing disadvantage; (3) the defendant was, in fact, surprised and suffered disadvantage; and (4) the type of testimony presented might have been readily contemplated by the defendant." Id., at 193 (citing State v. Fassero, 307 S.W.3d 669, 675 (Mo. App. E.D. 2010)).

■■■■ Here, the record does not support a finding of fundamental unfairness to Defendant due to the late endorsement of Officer Jackson as a witness. While Defendant did not waive his objection, there is no evidence in the record that the State intended to surprise or cause disadvantage, or that Defendant was surprised or suffered disadvantage. Defendant argues he was disadvantaged because he had no opportunity to depose Officer Jackson and was not sufficiently prepared to cross-examine Officer Jackson. However, Defendant does not claim he had no knowledge of Officer Jackson's involvement in this case before the State endorsed Officer Jackson as a witness,[3] nor does Defendant indicate what testimony he was unable to effectively cross-examine. Defense counsel elicited testimony from Officer Jackson that it was possible that the canine actually tracked the scent of another person, who was not the robber, due to the presence of other individuals at the scene.

Further, Defendant does not claim he was not able to contemplate the type of testimony Officer Jackson would give, as at the very least, defense counsel inter-

---

3. The State argued at the hearing on Defendant's motion in limine that the police report contained information about the canine search, including Officer Jackson's name. The police report is not a part of the record on appeal, so we cannot confirm its contents.

viewed Officer Jackson before trial. Additionally, Defendant's motion in limine noted that the State had endorsed another officer as a witness who was present during the canine search. We find no abuse of discretion by the trial court on this basis.[4]

■■■■■ Defendant also argues that the trial court abused its discretion in admitting Officer Jackson's testimony because it was more prejudicial than probative. To be admissible, evidence must be both logically and legally relevant. State v. Anderson, 76 S.W.3d 275, 276 (Mo. banc 2002). Evidence that tends to make the existence of a material fact more or less probable is logically relevant, and evidence that is more probative than prejudicial is legally relevant. Id.

■■■■ Here, Officer Jackson provided testimony establishing that the canine tracked a scent from just outside the laundromat to the block where Defendant lived. This is logically relevant evidence in that it tends to make the fact that Defendant was the one who fled on foot from the scene of the crime more probable. The fact that the track did not lead specifically to Defendant's house does not make it inadmissible. Though the connection may seem tenuous, "logical relevance has a very low threshold." Id. at 277.

Defendant's argument regarding legal relevance was that the State misled the jury by giving the impression that the canine tracked the person who robbed the

laundromat when it could have been another person. However, this goes to the weight of the evidence rather than its admissibility, and defense counsel elicited testimony arguing that the canine actually could have tracked another person who was present at the laundromat instead. Defendant failed to establish that he was unfairly prejudiced by the admission of this evidence. The trial court did not abuse its discretion in allowing the testimony of Officer Jackson. Point denied.

## Point IV

■■■ In his final point, Defendant argues that the evidence was insufficient from which the jury could have found beyond a reasonable doubt that he was the person who committed the robbery. Missouri courts have held on numerous occasions that the testimony of a single eyewitness, if believed by the jury beyond a reasonable doubt, is sufficient to establish the identity of a defendant. E.g., State v. Bolder, 635 S.W.2d 673, 679 (Mo. banc 1982); State v. Wren, 317 S.W.3d 111, 120 (Mo. App. E.D. 2010). Here, Victim identified Defendant, whom she knew personally, as the person who committed the charged crimes. It was the jury's role to determine whether they believed the State's evidence beyond a reasonable doubt, and we will not disturb their finding regarding this issue on appeal. See State v.

---

4. This Court is cognizant of the fact that both counsel for the State and defense are extremely busy, and that the State's final trial preparation often uncovers new evidence or causes changes to trial evidence presentation. The Circuit Attorney's Office can easily remedy issues of late endorsement, especially when it concerns police officers mentioned in police reports by simply endorsing all police officers in the police reports either (1) when the Circuit Attorney's Warrant Office initially files charges, or (2) when the Assistant Circuit Attorney reviews the case upon assignment.

There is no disadvantage to over-endorsing State's witnesses. See State v. Cole, 821 S.W.2d 129, 130-31 (Mo. App. E.D. 1992) (State has no obligation to call all endorsed witnesses). Depending on the facts, a trial court may not allow a late endorsement, or this Court may have to reverse a conviction, because of the lack of diligence in timely endorsing witnesses. Forethought by the State would avoid many late police officer endorsements, such as the one in the present case. It is the State's responsibility to endorse its witnesses timely and properly.

Byrd, 423 S.W.3d 882, 886 (Mo. App. E.D. 2014). Point denied.

### Conclusion

The trial court did not err in admitting evidence of Victim's pre-trial identification of Defendant in the photographic lineup, nor did the trial court abuse its discretion in denying a mistrial based on testimony alluding to Defendant's prior arrest or in admitting Officer Jackson's testimony regarding the canine search despite the State's late endorsement of him as a witness. Victim's eyewitness testimony provided sufficient evidence from which a reasonable jury could have found Defendant committed the charged crimes beyond a reasonable doubt. We affirm.

Robert M. Clayton III, J., concurs.

Angela T. Quigless, J., concurs.